[Civ. No. 14819. Fourth Dist., Div. One. Apr. 24, 1978.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v.
CHARLES BERNARD BROWN, JR., Defendant and Appellant.

298

**COUNSEL**

Geraldine M. Mele, Michael R. Valentine and Victor Harris for Defendant and Appellant.

Edwin L. Miller, District Attorney, Peter C. Lehman and Ronald S. Prager, Deputy District Attorneys, for Plaintiff and Respondent.

**OPINION**

**STANIFORTH, J.**—Defendant Charles Bernard Brown, Jr. (Brown) appeals from a judgment finding him to be the father of, and requiring him to pay reasonable support for, the minor Isaac. (Welf. & Inst. Code, § 11350.)

The complaint alleges Brown is separated from his wife Sherry and, as a consequence, plaintiff County of San Diego has paid public monies (aid to families with a dependent child) for Isaac's support. Brown has paid nothing for support of his wife or the child since public assistance was forthcoming despite his financial ability to pay a reasonable amount. He denies paternity of Isaac.

On trial by the court the parties stipulated: Brown married Sherry Brown on November 5, 1971, and lived with her as husband and wife until a physical separation on October 7, 1973; the child, Isaac, was born

on December 20, 1972; Sherry Brown is the mother of the minor child. During the period of conception, Brown was not impotent; Sherry Brown provided support for the child since November 7, 1973. Conception of the child occurred between the months of February and April 1972. The child, Isaac, has been in physical custody of the mother, Sherry Brown, since birth. The department of welfare has been providing child support since at least November 7, 1973. Brown is named as the father on the child's birth certificate.

After the stipulation, no further testimony "[was] necessary" the trial court declared. "Evidence Code section 621 comes into play."[1]

Brown then made the following offer of proof: (1) a comparison of his race, color and features with those of the child would show Brown is a black person with Negroid features, but the child and Mrs. Brown are white with Caucasian features, blue eyes, red hair, and fair skin; (2) testimony would establish that during the period of conception, Brown and Mrs. Brown had an "open marriage" in which Mrs. Brown, with Mr. Brown's knowledge and implicit consent, had sexual relations with other men; (3) testimony would establish that during conception, Brown lived apart from Mrs. Brown several times. Blood test results were not conclusive on the issue of paternity.[2]

The trial court "accepted Brown's offer of proof" but barred receipt of the proffered evidence based upon the applicability of the conclusive presumption of Evidence Code section 621. The cause was submitted and the trial court made appropriate findings of fact supporting its judgment holding Brown to be the father of Isaac.

■ We confront one critical issue: Can Brown offer proof in a judicial proceeding to the effect Isaac's skin pigmentation, coloration, "racial differences" are such it is "racially impossible" for Brown to be Isaac's father, notwithstanding the statutory presumption of Evidence Code section 621 which, on its face, precludes Brown from so doing?

---

[1]Evidence Code section 621 then provided: "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is conclusively presumed to be legitimate."

[2]The deputy district attorney disagreed with Brown's physical description of the child. He asserted "the child had sort of an olive colored skin with a brownish tint [with] some black features."

Brown asserts he has become a father by presumption without a fair opportunity to rebut the central charge—paternity—made against him. He contends "controlling judicial" interpretations of Evidence Code section 621 permit evidence, such as a racial difference between the husband and child, to demonstrate the presumption is "contrary to the laws of nature." Second, he argues the section 621 conclusive presumption in this case denies him a fair opportunity to rebut the paternity allegation, deprives him of due process of law guaranteed by the California and United States Constitutions. Third, Brown argues the application of the section 621 presumption deprives him of the equal protection of the laws guaranteed by the California and United States Constitutions.

We consider first Brown's assertion the trial court erred by failing to recognize a "racial impossibility" exception to Evidence Code section 621. Brown bases his assertion of nonpaternity on this proffered evidence; his subjective evaluation of the physical color characteristics of Isaac (disputed by the deputy district attorney) and some naive anthropologic conclusions and genetic observations all without base in 20th century authority.[3]

Brown concedes section 621, on its face, "appears absolutely conclusive" but asserts the California Supreme Court from 1919 onward has

---

[3]Brown's reliance upon Stern, Principles of Human Genetics (1960) pages 351-357, is misplaced. Stern not only does not support Brown's bold assertions but presents evidence to the contrary. In An Introduction to the Study of Man (1971), J. Z. Young states:

"Although the genetic mechanisms are not fully known, they agree with the well-established observation that inheritance is polygenic and children show a degree of pigmentation intermediate between that of the parents and never at any great distance away in either extreme direction. Contrary to popular myth, there is no evidence that there is ever a sudden reappearance of extremes of pigmentation in the later generations after crossing.

"Whatever the detailed genetical and physiological mechanisms may be, there is no doubt that human populations are highly polymorphic for skin colour. The fact that such different genes are retained must mean that they have some selective advantages (or have had them until recently). These need not necessarily be actually in the colour itself. Pigmentation might be linked with other metabolic features that provide the advantage, but the simplest explanation is the connection with vitamin D synthesis discussed above." (*Id.*, at p. 584.)

A further difficulty with Brown's thesis of predicting [non]parentage based upon skin pigmentation is found in the treatises of Montagu, Origin and Evolution of Man (1973) pages 558-578. The evidence there presented completely undercuts the reliability of predicting parentage in any *specific* case upon skin pigmentation. Brown's reliance upon Schatkin, Disputed Paternity Proceedings (4th ed. 1967) section 3.12, is equally without merit. Schatkin, for authority, rests primarily upon 19th century southern state court decisions determined long before the effect of Mendel's early work was understood or enlarged upon.

consistently recognized the presumption does not apply where "it is impossible by the laws of nature" for the husband, who otherwise meets the statutory foundational criteria to be the father. This claimed "racial difference" exception found its way into dicta of two California cases from 19th century post-civil war southern state cases.

The California Supreme Court in *Estate of McNamara* (1919) 181 Cal. 82 [183 P. 552, 7 A.L.R. 313] stated: "There is one class of cases where it is recognized in this country at least, that the husband is not to be taken as the father of the child, even though he had intercourse with his wife during the normal period of conception. That instance is where the husband and wife are of the same race, as for instance, white, and it appears that the wife has had intercourse with a man of another race, as, for instance, a negro, and the child is of mixed blood. (*Watkins* v. *Carlton,* 10 Leigh (Va.), 560; *Bullock* v. *Knox,* 96 Ala. 198, [11 South. 339]; *Wright* v. *Hicks,* 12 Ga. 161, [56 Am.Dec. 451]; *Cross* v. *Cross,* 3 Paige (N.Y.), 139, [23 Am.Dec. 778].)" (*Id.,* at p. 96.)

The second case reciting such concept is *Estate of Walker,* 180 Cal. 478, 491, 492 [181 P. 792]. The dicta, twice expressed, is not sound law. As was pointed out in *Hess* v. *Whitsitt,* 257 Cal.App.2d 552 [65 Cal.Rptr. 45, 32 A.L.R.3d 1297]: "The *McNamara* dictum has been criticized on the ground that it is not supported by a satisfactory scientific basis and has also been questioned from the standpoint of statutory construction." (*Id.,* at pp. 554-555.) And concludes: ". . . the *McNamara* dictum does not correctly state the law of California as to the conclusive presumption." (*Id.,* at p. 555.) And held: "We hold that a racial difference exception was not embodied in subdivision 5 of section 1962 of the Code of Civil Procedure [the identical section preceding section 621 of the Evidence Code]." (*Id.,* at p. 555.)

We conclude Brown's position is based not only on unsupported genetic assertions, but on dictum not subsequently followed in the State of California.

Brown next argues this presumption makes him a father albeit denied; section 621 does not permit him to controvert the presumed facts with his "evidence" of racial impossibility.

The California Supreme Court rejected a parallel argument made on behalf of blood tests in *Kusior* v. *Silver,* 54 Cal.2d 603, 616 [7 Cal.Rptr. 129, 354 P.2d 657], holding the conclusive presumption of Evidence

Code section 621 is "a substantive rule of law" which is constitutional "unless it transcends such a power of the Legislature." (*Kusior v. Silver,* *supra,* 54 Cal.2d 603, 619.) The Legislature has the power to determine, as a matter of overriding social policy, given a certain relationship between husband and wife, the husband is to be held legally responsible for the child. (*Id.,* at p. 619.) Although the blood test might prove conclusively the legal husband was not the biological husband, such proof would not be permitted. "There are significant reasons why the integrity of the family when husband and wife are living together as such should not be impugned." (*Ibid.*)

The purpose underlying the statutory presumption of conclusiveness does not imply a legislative doubt as to the scientific reliability of blood tests but rather the purpose is to determine the legal father, to achieve certain social policies upholding the integrity of the family (*Kusior v. Silver, supra,* 54 Cal.2d 603, 619), to protect the child from the stigma of illegitimacy (*Estate of Lund,* 26 Cal.2d 472, 480 [159 P.2d 643, 162 A.L.R. 606]), or to protect the child's welfare and to give the father a child and to keep the child off the state's welfare roll. (*In re Lisa R.,* 13 Cal.3d 636, 649-650 [119 Cal.Rptr. 475, 532 P.2d 123].)

 Brown relies upon *Jackson v. Jackson,* 67 Cal.2d 245 [60 Cal.Rptr. 649, 430 P.2d 289], where the Supreme Court held blood test evidence admissible in conjunction with other evidence to disprove the *preliminary fact* of cohabitation. The Jackson marriage had lasted only four days. The word "impossibility" as used in *Jackson* related to proof of the existence or nonexistence of the *preliminary fact to determine the applicability to Evidence Code section 621. Jackson* has no application where the preliminary facts, as here, are conceded.

The cases which preclude evidence of blood factors which would establish nonpaternity where the preliminary fact basis of section 621 is conceded, are a fortiori and applicable here (see *Louis v. Louis,* 7 Cal.App.3d 851, 855 [86 Cal.Rptr. 834]; and *Keaton v. Keaton,* 7 Cal.App.3d 214, 216 [86 Cal.Rptr. 562]) for blood tests are certainly more reliable in a scientific sense than physical stigmata as evidence of [non]parentage.

Next Brown contends Evidence Code section 621, in denying him the opportunity to rebut the paternity allegation, deprives him of property—child support monies—and, potentially, liberty—incarceration for nonsupport—without due process of law as guaranteed by the

Fourteenth Amendment of the federal Constitution and article I, section 7, of the California Constitution. He asserts conclusive presumptions are constitutionally suspect and disfavored under the due process clause citing *Vlandis* v. *Kline,* 412 U.S. 441, 446 [37 L.Ed.2d 63, 68, 93 S.Ct. 2230]; *In re Lisa R., supra,* 13 Cal.3d 636, 642, 645.

In *In re Lisa R., supra,* 13 Cal.3d 636, the California Supreme Court invalidated a conclusive presumption of legitimacy of a child born "during the marriage" (Evid. Code, § 661) upon due process considerations. Victor R., Lisa's unwed natural father, sought to gain visitation rights and terminate Lisa's dependency status. The mother disclosed Lisa R. was conceived during a casual relationship with Victor R. when separated from her husband. The trial court relied upon the conclusive presumption of Evidence Code section 661 and denied Victor R. the opportunity to submit proof of his paternity. The Supreme Court reversed, following the reasoning of *Stanley* v. *Illinois,* 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208], stating: "In broad terms *Stanley* states that the interest of an unwed father in his children is not only cognizable but also of sufficient substance to warrant deference except when the deprivation comports with equal protection and due process requirements. '[T]he guarantee of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the objects sought to be attained.' [Citation.] The question whether appellant, as one claiming to be Lisa's natural father, can rebut the presumption that Lisa is the issue of her mother's marriage must thus be resolved by weighing the competing private and state interests." (*In re Lisa R., supra,* 13 Cal.3d 636, 648.)

After reviewing the "private interests" of the father seeking to assume the duties as well as the rights of fatherhood and the countervailing interests of the state, the Supreme Court held the due process clause of the United States and California Constitutions required an opportunity be given to the father to rebut the Evidence Code section 661 presumption. The Supreme Court concluded: ". . . for reasons at least as compelling as those in *Stanley,* that a presumption which precludes to appellant in the instant circumstances a right to offer evidence to prove that he is the father of the minor child is unreasonable, arbitrary and capricious, and a denial of due process." (*Id.,* at p. 651.)

We note this significant fact: The same public interests and purposes which were served by the invalidation of section 661 in *In re Lisa R.* to

allow the biological father to establish himself as the legal father are served by the application of the conclusive presumption rule of Evidence Code section 621 to preclude Brown's use of racial stigmata to deny legitimacy to Isaac.

Brown's reliance upon *Vlandis* v. *Kline, supra,* 412 U.S. 441, is equally misplaced. ■ He recites therefrom the sound proposition any conclusive presumption violates due process guarantees "when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination." (*Id.,* at p. 452 [37 L.Ed.2d at p. 71].) This twofold test is applicable to all conclusive presumptions. ■ All classes of presumption deal with a situation where the trier of fact finds the existence of a presumed fact from the existence of a basic fact. If the adverse party is not permitted to introduce evidence to contradict the existence of the presumed fact, then the presumption is conclusive. If the existence of a preliminary fact invariably led to the conclusion expressed in the presumed fact there would be no need for the presumption. Thus it follows, all presumptions necessarily assume facts not universally true.

■ The crucial question, from a due process point of view, arises in the second prong of the twofold test; that is, are there reasonable alternative means to determine paternity in the fact situation here present? The cases cited by Brown are inapposite for they deal with situations where there are reasonable alternative means to ascertain the true facts necessary to implement the state policy. In *Turner* v. *Dept. of Employment Security,* 423 U.S. 44 [46 L.Ed.2d 181, 96 S.Ct. 249], there existed a reasonable alternative means by way of a medical examination to determine whether a pregnant woman was unable to work and therefore ineligible for unemployment insurance. In this context there was no need for a presumption of a fact not universally true. In *Cleveland Board of Education* v. *LaFleur,* 414 U.S. 632, 644, 648 [39 L.Ed.2d 52, 64-65, 94 S.Ct. 791], the point at which a pregnant woman would become unable to teach school could be readily discerned by a simple medical examination of the woman. There was no need for a conclusive presumption, not universally true, in the fourth month of pregnancy all women were thereby rendered unfit to teach. In *Vlandis* v. *Kline, supra,* 412 U.S. 441, there was a conclusive presumption of nonresidency where a student's legal address was outside the state at the time of his application for admission. The Supreme Court held this means of requiring extraordinary fees denied due process.

Finally, *Stanley* v. *Illinois, supra,* 405 U.S. 645, held a reasonable alternative means existed to determine Stanley's fitness as a parent. Therefore, the conclusive presumption all unwed fathers, but not unwed mothers, were unfit parents denied due process.

In the fact matrix here there are no reasonable alternative means of determining the paternity of the child conceived during a lawful marriage of these cohabitating persons. Blood test evidence, at the present state of an albeit rapidly advancing science does not yet designate a specific individual as the biological father. In some cases blood factors may operate to eliminate a certain man as the father. Brown, however, is not eliminated by the blood tests taken; they are inconclusive as to him. At the present state of the science of genetics, racial stigmata probably belongs with the seat-of-the-pants test as the means of determining specific parentage.[4] The legitimacy of the child, the stability of titles to property and rights of inheritance and the sanctity of the family are considerations not to be disturbed—overruled—by scientifically unsubstantiated genetic assertions. It is not a reasonable alternative means of determining [non]parentage.

The Legislature has, under its police power, the authority to enact legislation reasonably necessary to promote public health, welfare and safety. Legitimization, as well as succession of property, is properly a matter for legislative action for the public policy of this state favors legitimization. (*Estate of Lund, supra,* 26 Cal.2d 472, 484-485, 490.) Legitimacy as a legal status may exist despite the fact the husband is not the natural father of the child. (*People* v. *Sorensen,* 68 Cal.2d 280, 286 [66 Cal.Rptr. 7, 437 P.2d 495, 25 A.L.R.3d 1093].) The Legislature has the authority, pursuing such legitimate objectives, to make proof of one fact or group of facts evidence of the existence of an ultimate fact. (*United States* v. *Romano,* 382 U.S. 136, 139 [15 L.Ed.2d 210, 212-213, 86 S.Ct. 279].) Such legislation is constitutional so long as there is a rational connection between the fact proved and the ultimate fact presumed.

---

[4]Stern, Principles of Human Genetics, *supra,* at page 3, underscores the tentative nature of any prediction in this area: "Human genetics is a young science. When, in the early twentieth century, the modern study of heredity in plants and lower animals resulted in the discovery of the laws of biological inheritance, enthusiastic men drew far-reaching conclusions concerning the hereditary nature of differences among human individuals . . . . These conclusions were not just stated as theories, but included plans for 'human engineering' . . . . It became evident later that the factual knowledge of man's inheritance was too narrow to justify such actions. . . . The work of the past three decades has greatly increased our knowledge, but the preliminary nature of much of it must still be emphasized."

Where the inference of one from the proof of the other is arbitrary because of the lack of a connection between the two in the common experience or where the inference "is so strained as not to have a reasonable relation to the circumstance of life as we know them," it is not competent for the Legislature to create such rule governing procedures of court.

██ The standard in cases dealing with presumptions effecting legitimacy is the rational standard—there must exist a rational relationship between the proven fact and the presumed fact. (*Pacific Employers Ins. Co.* v. *Ind. Acc. Com.,* 81 Cal.App.2d 37, 40 [183 P.2d 344]; *Mathews* v. *Lucas,* 427 U.S. 495, 506 [49 L.Ed.2d 651, 661, 96 S.Ct. 2755].) The burden is upon Brown to demonstrate the insubstantiality of that relationship. (*Id.,* at p. 510 [49 L.Ed.2d at pp. 663-664].) Common experience tells us a rational connection exists between conception of the child by a woman during marriage, during cohabitation with a nonimpotent husband, and the ultimate fact of paternity of that man. When conception occurs in such circumstance, it is most rational to designate the husband with whom the wife was living at the time of conception as the father. Brown's burden remains unfulfilled to demonstrate the insubstantiality of that relationship, to establish the presumption is in any respect arbitrary.

Brown's offer of proof—viewed in the light of his stipulations—does not cast the conclusive presumption of Evidence Code section 621 in the role of an arbitrary, unreasonable, capricious rule denying him due process of law. To the contrary, the legislative wisdom expressed in the presumption is no longer opaque. It becomes clear in the light of Brown's claims made here. The statutory limitation on the right to offer proof of nonparentage is eminently reasonable. Due process considerations are not offended by denying Brown the opportunity to present his proffered evidence of "racial impossibility."

Finally, Brown contends Evidence Code section 621 denies him equal protection of the laws and thus violates the constitutional precepts. Brown points to the lack of a conclusive presumption of paternity where a child is born out of wedlock as evidence of a dual classification violative of equal protection. In determining whether a statutory classification violates rights of equal protection, the California courts have adopted the "two-level" test employed by the United States Supreme Court. (*Sail'er Inn, Inc.* v. *Kirby,* 5 Cal.3d 1, 16 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].) These are (1) the "rational

relationship" test or (2) where there is a "suspect classification" or the statute touches upon "fundamental interests" it is subject to "strict scrutiny." In the latter class of statutes, the state bears the burden of establishing not only that it has a "compelling interest" which justifies the law, but also the distinctions drawn by the law are necessary to further its purpose. (*Westbrook* v. *Mihaly,* 2 Cal.3d 765, 785 [87 Cal.Rptr. 839, 471 P.2d 487]; see also *Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d 1, 16-17.)

Brown cites no authority requiring application of the strict scrutiny standard where the statute in question effects legitimacy. To the contrary, as we noted when discussing the due process contention, the applicable constitutional standard applied to statutes dealing with presumptions effecting legitimacy is the rational relationship standard. (*Mathews* v. *Lucas, supra,* 427 U.S. 495.)

Whether the test is that of the rational relationship or strict scrutiny is academic; we have heretofore recited those "compelling" reasons justifying the classification implied in Evidence Code section 621. Where there is no marriage, no family integrity, no existing legitimacy status to preserve, similar vital interests are either not present or attenuated. Although a distinction is made, it is based upon both compelling interest and reason. We conclude no constitutional bar precludes application of Evidence Code section 621 in this case.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied May 10, 1978, and the opinion was modified to read as printed above.