[Civ. No. 48559. First Dist., Div. One. Sept. 19, 1980.]

CHARLES EDWARD SMITH, Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

D. Michael Lawrence, Public Defender, and Gerald M. Osmer, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci, Gloria F. Dehart, Clifford K. Thompson, Jr., and Thomas A. Brady, Deputy Attorneys General, for Real Party in Interest.

OPINION

**GRODIN, J.**—Petitioner, Charles Edward Smith, is the defendant in a paternity action currently pending in the Superior Court for the County

of Monterey. The action was originally commenced in the State of Louisiana, and is being pursued by the District Attorney of Monterey County (real party in interest here) pursuant to the Revised Uniform Reciprocal Enforcement of Support Act of 1968 (Code Civ. Proc., § 1650 et seq.). Petitioner was served in that action with requests for admissions seeking to establish petitioner's relationship with the mother of the child whose paternity was contested. Petitioner refused to respond to the requests, stating as the basis for his refusal the privilege against self-incrimination contained in the Fifth Amendment of the United States Constitution; article I, section 15 of the California Constitution; and Evidence Code section 940. Respondent court rejected his arguments based on privilege, and ordered him to answer. In this proceeding, petitioner seeks a writ of mandate to compel that court to vacate its order.

Evaluation of the parties' competing contentions calls for consideration of the requested admissions in the context of the statutory scheme. Petitioner in the underlying proceeding admitted paternity of three of the four children as to whom a determination was sought, but denied paternity of the fourth, and youngest, child. The admissions sought are (1) that the child was born while petitioner and his ex-wife were married and living together; (2) that they were married to one another prior to and at the time the child was born; (3) that petitioner received the child into his home and openly held her out as his natural child; and (4) that at the time the child was conceived, petitioner was not impotent or sterile and was married to his ex-wife and cohabiting with her.

These admissions, if made, would give rise to a "conclusive presumption" (Evid. Code, § 620) that the wife's issue was a "child of the marriage" (Evid. Code, § 621),[1] and thus would form the basis for a determination of legal paternity and obligation to support (*Kusior* v. *Silver* (1960) 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657]; *People* v. *Thompson* (1979) 89 Cal.App.3d 193 [152 Cal.Rptr. 478]; *County of San Diego* v. *Brown* (1978) 80 Cal.App.3d 297 [145 Cal.Rptr. 483]). The admissions as such would not be admissible as evi-

---

[1]Evidence Code section 621 provides: "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." The Supreme Court has observed that "the so-called conclusive presumption is really not a presumption but rather a rule of substantive law." (*Jackson* v. *Jackson* (1967) 67 Cal.2d 245, 247 [60 Cal.Rptr. 649, 430 P.2d 289].)

dence in any other action (Code Civ. Proc., § 2033, subd. (d)),[2] but in the event of prosecution for wilful nonsupport under Penal Code section 270, the "final establishment of paternity...[would be] admissible as evidence of paternity" (Pen. Code, § 270e).[3] It is on this basis that petitioner claims the compelled disclosure could serve as a "'link in a chain' of evidence tending to establish guilt of a criminal offense." (*Prudhomme v. Superior Court* (1970) 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466 P.2d 673].)

 As regards the possibility of prosecution for conduct which may have occurred prior to the requested admissions, petitioner's claim is well taken. Penal Code section 270e provides for admissibility of a final establishment of paternity in "any prosecution" pursuant to that section. The crime of wilful omission to support is a "wobbler" offense, being a misdemeanor or felony depending upon whether there has been a final adjudication of paternity of which the defendant has notice. (Pen. Code, § 270.) Thus, it is clear that a person can be convicted for wilful failure to support in the absence of any prior adjudication, and nothing in the section appears to limit admissibility of such an adjudication to a prosecution for subsequent conduct. Respondent does not contend otherwise, but argues that the existence of a pending civil paternity action in which petitioner has denied paternity "would seem to foreclose any possibility that prosecution for *willful* failure to provide support in the past could be maintained." We cannot indulge in such an assumption, however, particularly in light of the fact that Penal Code section 270e makes proof of omission to furnish specified support "prima facie evidence that such...omission...is willful." Denial of a witness' claim of privilege requires a finding "that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged question cannot possibly have a tendency to incriminate the witness. [Citations.]" (*Prudhomme v. Superior Court, supra*, 2 Cal.3d at p. 326.) We conclude that, in the absence of a tender of use immunity for past conduct, petitioner cannot constitutionally be required to respond to the request for admissions in this case.

---

[2]Code of Civil Procedure section 2033, subdivision (d) provides: "Any admission made by a party pursuant to such request is for the purpose of the pending action only and neither constitutes an admission by him for any other purpose nor may be used against him in any other action."

[3]The prior judgment would not be res judicata on the issue of paternity because of the higher standard of proof in criminal cases. (*Salas v. Cortez* (1979) 24 Cal.3d 22, 29, fn. 5 [154 Cal.Rptr. 529, 593 P.2d 226].)

Petitioner, however, claims a right to use immunity with respect to criminal prosecution for possible *future* conduct on his part, and on this score we find his claim to be without merit. While it is true that the privilege of self-incrimination applies in some cases to prospective acts (*Marchetti* v. *United States* (1968) 390 U.S. 39 [19 L.Ed.2d 889, 88 S.Ct. 697], the hazards of incrimination must be "substantial and 'real,' and not merely trifling or imaginary." (*Id.*, at p. 53 [19 L.Ed.2d at p. 901]; see also *United States* v. *Freed* (1971) 401 U.S. 601, 606-607 [28 L.Ed.2d 356, 360-361, 91 S.Ct. 1112].) The contexts in which the privilege has been held applicable to prospective acts have been, for the most part, ones involving disclosure requirements imposed upon a "highly selective group" of persons "inherently suspect" of criminal activity. (*Albertson* v. *SACB* (1965) 382 U.S. 70, 79 [15 L.Ed.2d 165, 172, 86 S.Ct. 194]; see also *Grosso* v. *United States* (1968) 390 U.S. 62 [19 L.Ed.2d 906, 88 S.Ct. 709].) The present context is quite different. If the privilege were applicable here, there is no reason why it would not apply in any situation in which a defendant in a civil proceeding is asked to provide information which could lead to a judgment against him under circumstances in which the judgment is enforceable through criminal contempt. Thus, a defendant in a civil proceeding for an injunction could invoke the privilege as a basis for refusing to respond to any questions on the ground that his answers might lead to issuance of the injunction and, should he then choose to violate the court's order, to criminal prosecution. Obviously the hazard of incrimination in such a case is too attenuated, and the same is true here.

The alternative writ is discharged, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Racanelli, P. J., and Newsom, J., concurred.