[Civ. No. 59767. Second Dist., Div. Five. Oct. 14, 1981.]

In re Marriage of SHARYNE and STEPHEN B.
STEPHEN B., Appellant, v.
SHARYNE B., Respondent.

COUNSEL

Weitzman, Fidler & Re, Howard L. Weitzman, Larry Fidler, Donald M. Re and Scott S. Furstman for Appellant.

Frederic S. Wieder for Respondent.

OPINION

**HASTINGS, J.**—This appeal challenges the constitutionality of Evidence Code section 621 as amended by emergency legislation effective as of September 30, 1980.[1]

Stephen B., is appealing from a portion of an interlocutory judgment entered in a dissolution of marriage proceeding that ordered him to pay child support for a minor son born to Sharyne B., respondent and appellant, during their marriage. Appellant claims that an HLA tissue-typing

---

[1]Evidence Code section 621 as amended provides: "(a) Except as provided in subdivision (b), the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage.

"(b) Notwithstanding the provisions of subdivision (a), if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon blood tests performed pursuant to Chapter 2 (commencing with Section 890) of Division 7 are that the husband is not the father of the child, the question of paternity of the husband shall be resolved accordingly.

"The notice of motion for blood tests under this subdivision shall only be raised by the husband and shall be raised not later than two years from the date of birth of the child. [¶] The notice of motion for the blood tests pursuant to this subdivision must be supported by a declaration under oath submitted by the moving party stating the factual basis for placing the issue of paternity before the court. This requirement shall not apply to any case pending before the court on the effective date of the amendment to this section adopted at the 1979-80 Regular Session of the Legislature.

"The provisions of this subdivision shall not apply to any case which has reached final judgment of paternity on the effective date of the amendment to this section adopted at the 1979-80 Regular Session of the Legislature."

test (HLA test) that he took conclusively demonstrated that he was not the biological father of the minor child and that he should now be permitted to use the test to overcome the conclusive presumption of Evidence Code section 621.

## FACTS

Appellant, on April 7, 1978, filed a petition for dissolution of his marriage to respondent and in the petition alleged that there was one minor child of the marriage born on June 21, 1976.

The trial of the dissolution of the marriage commenced on July 5, 1979. Prior to the commencement of the trial appellant attempted to raise the issue of nonpaternity by seeking permission to file an amended petition that deleted the allegation that a minor child had been born to the parties. Despite the court's initial opinion that an order permitting the amendment would be improper due to the conclusive presumption of section 621 as it then read, the amended petition was nevertheless filed.

At the trial appellant sought to introduce evidence of the HLA test.[2] Appellant argued that section 621 'was unconstitutional; however, the court disagreed and ruled that there was a conclusive presumption of paternity based upon the section.

A notice of appeal from the interlocutory judgment was filed by appellant on January 8, 1980. While the appeal was pending section 621 was amended. The amended section provides the same conclusive presumption but allows the presumption to be rebutted if conclusions of experts pursuant to blood tests determine that the husband is not the father of the child. The section as amended, however, provides that the issue must be raised by notice of motion for blood tests filed by husband and this shall be done not later than two years from date of birth of the child. The minor was over two years old when appellant filed his petition to dissolve the marriage.

---

[2]Appellant offered in evidence an HLA test that he took at the UCLA Medical Center. It stated in pertinent part: "The HLA tissue-typing demonstrates that the father of [the minor] must have groups A2-B-12, A2-B-38, A2-B-12, or A26-B-38. Since Stephen B. does not have these groups, he can be excluded as the father of [the minor]."

### APPELLANT'S CONTENTIONS ON APPEAL

 Appellant challenges the constitutionality of section 621 as amended on two grounds. First, he claims decisional law upholding the conclusive presumption of former section 621 developed before blood tests could conclusively prove that the husband was not the biological father of the child born to his spouse.[3] Now that the blood tests can successfully rebut such a presumption there can be no reasonable relationship between the presumption and the fact sought to be presumed; therefore, he is denied due process of the law guaranteed by the California and United States Constitutions if he is denied an opportunity to introduce such evidence. Second, husbands who had a child or children over two years old at the time section 621 was amended and had a marriage dissolution case pending before the court are denied equal protection of the law because they are precluded from benefits of the amended section.

### DISCUSSION

### I

Appellant is partially correct in his first argument. Early California cases were able to justify the conclusive presumption in question on the ground that no competent evidence could be adduced to indicate who among those who had had intercourse with the wife during the period of possible conception was the biological father of the child born to her.[4] However, as blood tests became scientifically reliable so that they could exclude a husband as the biological father, the courts sustained the legislative mandate by unabashedly calling it a substantive rule of law. This was dramatically emphasized in *Kusior* v. *Silver* (1960) 54 Cal.2d 603 [7 Cal.Rptr. 129, 354 P.2d 657] where as here, it was argued that there was no longer a reasonable relationship between the presumption and the fact sought to be presumed. In reply to this argument, our Supreme Court said: "There are significant reasons why the integrity of the family when husband and wife are living together as such should not be impugned. A conclusive presumption is in actuality a substantive rule of law and cannot be said to be unconstitutional unless it transcends such a power of the Legislature." (*Id.*, at p. 619.)

---

[3]Section 621, before and after the amendment, excludes use of the conclusive presumption if the father was impotent or sterile.

[4]The conclusive presumption was formerly found in Code of Civil Procedure section 1962, subdivision 5. Evidence Code section 621 superseded said section.

This reasoning did not, however, prevent our Supreme Court from permitting blood grouping tests in a rather unique case decided approximately seven years later. In *Jackson* v. *Jackson* (1967) 67 Cal.2d 245 [60 Cal.Rptr. 649, 430 P.2d 289] in an annulment proceeding where the parties had been married only four days, the majority of the court in a four-to-three decision stated at page 248: "*Kusior* v. *Silver, supra,* 54 Cal.2d 603, correctly holds, on the facts of that case, that the presumption of Evidence Code section 621 is not so much a conclusive presumption as it is a rule of substantive law that a husband will be treated as the father of a child born to his wife and conceived while they were cohabiting. It makes no difference whether the husband is the biological father, for the basis of the inquiry is whether he is the legal father of the child; he must be given a chance to prove that he is not the legal father by demonstrating the impossibility that the child was conceived during his cohabitation with his wife. In the instant case plaintiff was denied this opportunity."

Although the dissent authored by Justice Burke disagrees with the result reached by the majority it further emphasizes that the conclusive presumption is grounded more on public policy than on rational integrity. Speaking of the majority opinion Justice Burke states: (p. 249): "This ruling jeopardizes the integrity of the marriage state. It pierces the protective shield which the law has heretofore placed around children born to married couples and subjects their status as the legitimate issue of their parents to the vagaries of test tubes and chemistry. Heretofore it has been the public policy of this state, supported by the courts [citing *Kusior*] that the greater good to be served is to preserve the legitimacy of children born to married people cohabiting together from attack. [¶] However, the effect of today's ruling is to add another exception, based on blood test evidence, to the conclusive presumption of legitimacy set forth in section 621 of the Evidence Code, and this despite the most convincing proof—recognized and spelled out in *Kusior*—that the Legislature considered and rejected such an exception. In *Kusior* this court declined to accept the argument that blood tests results allegedly showing that the husband could not have fathered the child should be made an exception to the rule, and specifically held . . . that such tests may not be used to controvert the conclusive presumption of paternity created by the Legislature."

The Legislature, at least prior to the amendment, used this conclusive presumption fiction for three public policy reasons, namely, (1) preservation of the integrity of the family; (2) protection of the innocent child

from the social stigma of illegitimacy; and (3) a desire to have an individual rather than the state assume the financial burden of supporting the child.[5] The Legislature, by its 1980 amendment to section 621 has recognized that blood tests are now reliable evidence on the issue of paternity. The conclusive presumption, however, has been retained subject to what amounts to a two-year statute of limitations on a husband's right to introduce such evidence. The legislative reasoning behind the amendment is probably found in 20 Stan. L. Rev. 754 titled *California's Tangled Web: Blood Tests and the Conclusive Presumption of Legitimacy* (see fn. 5, *ante*). We say *probably* because the article was written before the amendment. The author first attacks the logic behind the three public policy reasons stated above. As to reason (1), "family integrity," this concept generally means a close-knit group with little serious dissension among its members or regardless of dissension, the legal bonds among them—with their attendant responsibilities—remain intact. But when the husband is seeking to avoid child support on the ground that the child was fathered by a third party, "actual" family integrity has been shattered. Only "legal" family integrity can be served by excluding blood tests. (*Id.*, at pp. 758-759.) Reason (2), "legitimatizing the child," is just as suspect in that the conclusive blood test sought to be introduced clearly notifies the child that the husband is not the father. And reason (3), removing an economic burden to the state, is, really de minimis in this type of situation. (*Id.*, at pp. 759-760.)

Although the author recognizes that many legal commentators and judges attack the conclusive presumption because it has no relationship to the ultimate fact, he then suggests another public policy reason for supporting the conclusive presumption. As stated earlier, it would appear to be the very reason that was accepted by the Legislature when it amended section 621. The article states: "In the case of a young child the most palpable relation that anyone has to the child is a biological relationship. The child has no personality, he can communicate with no one, and no one can be said to have exercised a formative influence on his character. But in the case of an older child the familial relationship between the child and the man purporting to be the child's father is considerably more palpable than the biological relationship of actual paternity. A man who has lived with a child, treating it as his son or daughter, has developed a relationship with the child that should not be

---

[5]See, Recent Developments, *California's Tangled Web: Blood Tests and the Conclusive Presumption of Legitimacy*, (1968) 20 Stan.L.Rev. 754.

lightly dissolved and upon which liability for continued responsibility to the child might be predicated. This social relationship is much more important, to the child at least, than a biological relationship of actual paternity. [¶] . . . The burden of child support is still founded on a relation of the man to the child. In a sense this is a *paternal* relation, although the man may not be the child's biological father. . . . [¶] . . . Where a strong social relationship to the child has not yet developed, the only basis for a duty on the husband's part to support the child is biological fatherhood of the child. Inasmuch as blood tests are the most reliable evidence of nonpaternity, they should be admissible on the issue of biological paternity in all cases where this issue is the recognized foundation of liability for child support—cases, that is, that involve a contest over the legitimacy of a young child. . . . [¶] Rules of evidence, however, are an oblique response to the problem of defining the proper sphere of each competing policy; . . . This indirection is inexcusable where, as here, the conflict between the policies can be resolved more rationally by the simple expedient of a statute limiting the time in which actions to escape responsibility for a child born to a married woman may be brought. [¶] *The adoption of a statute of limitations in lieu of the present tangle of evidentiary rules* offers the obvious advantage of greatly simplifying the law and at the time moving the law to closer conformity with the relevant policies. A statute of limitations would eliminate the present injustice of denying a husband conclusive evidence of nonpaternity—blood tests—in those cases in which paternity is the determinative question. . . . The legislature should address itself squarely to the problem of defining a period after the birth of a child during which biological paternity would be determinative of a husband's duty to support his wife's child, and it should announce clearly that after this period has expired biological nonpaternity shall be irrelevant to the existence of this duty." (*Id.* pp. 761-765.) (Italics added.)

Appellant's first challenge to the constitutionality of section 621 as amended must fall for two reasons:

(1) *Kusior* has not been overruled. Our Supreme Court has upheld the constitutionality of the conclusive presumption for the public policy reasons stated above by labeling it a substantive rule of law. Although the Legislature in the amended version of section 621 has recognized that it can no longer blindly turn away from the scientific results of blood tests, it has in reliance on our Supreme Court decisions retained the conclusive presumption, assumedly for public policy reasons, subject to the two-year exception. Accordingly, the reasoning of *Kusior* is just

as viable on the constitutionality of the amended section 621 as it was to its predecessors, and we must affirm. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

(2) The practical result of the amendment is to permit a husband, for the first time, to establish by blood tests, nonpaternity where a child is conceived during cohabitation of the parties. However, this right is subject to a two-year statute of limitations. As a matter of constitutional law, a statute of limitation is remedial in nature and does not destroy fundamental rights. The enactment is always a legislative prerogative and does not violate constitutional guarantees.[6] (51 Am.Jur.2d, Limitation of Actions, § 27, p. 611.)

## II

Appellant's second contention is that he is denied equal protection of the law in that he is precluded from introducing the HLA test because the minor was over two years old at the time the dissolution action was filed. Enactment of a statute of limitations is unconstitutional if it deprives a person of a vested right, or of an existing cause of action. This problem is eliminated, however, by the court's allowing the person affected a reasonable time, after the statute's effective date to bring an action at law to enforce the right. However, amended section 621 is not in this category. No vested right or cause of action is being curtailed, or eliminated. Instead, a new right has been created subject to the two-year statute of limitations. Appellant's position is the same as it was when he entered into the marriage and later when the minor was born. While it might seem harsh on appellant, and probably hundreds of others similarly situated, the statute of limitations on this new rule of evidence, for reasons previously mentioned, is not constitutionally invalid. Furthermore, the equality guaranteed by the equal protection clause is equality under the same conditions and among persons similarly situated. The amendment provides such equality to all husbands with alleged minor children under two years of age. Appellant, merely finds himself in a class not benefited by the section, in which all, so to speak, are in the same boat. If appellant was given the right to introduce the blood tests, other husbands now or later involved in marriage dissolution actions could seek the same relief, even though the minor involved might have reached his or her 17th birthday. In such a situation the

---

[6]There are exceptions to this rule, but they are inapplicable to the legislation here.

public policy reasons behind the statute, which we have held are constitutionally valid, would be defeated.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied November 9, 1981, and appellant's petition for a hearing by the Supreme Court was denied December 9, 1981. Kaus, J., did not participate therein.