[L.A. No. 31631. Jan. 26, 1984.]

Estate of WILLIS CORNELIOUS, Deceased.
TRUDY ANN HALL, Petitioner and Appellant, v.
HETTIE TAYLOR, Petitioner and Respondent.

462

**COUNSEL**

Lloyd Edward Tooks for Petitioner and Appellant.

Clifford C. Caldwell and Pinney & Caldwell for Petitioner and Respondent.

**OPINION**

**KAUS, J.**—Appellant Trudy Ann Hall challenges the constitutionality of the rule of Evidence Code section 621, subdivision (a), that "the issue of a

wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage."[1] Hall contends that application of the presumption to bar her from proving that Willis Cornelious, deceased, was in fact her natural father, denies her due process.

Willis Cornelious died intestate, leaving neither a spouse nor legitimate children. His surviving sisters nominated Hettie Taylor to administer his estate. Trudy Hall applied for letters of administration on the basis of Probate Code section 422, which gives priority to children over siblings, or their nominees. Section 422 requires the person claiming priority under that section to be entitled to succeed to all or part of the decedent's estate. To meet that requirement Hall had to show that a parent-child relationship existed between herself and decedent before his death. (Prob. Code, § 255, subd. (a).) The existence of such a relationship may be established for these purposes by showing an unrebutted presumed relationship or one judicially declared under the Uniform Parentage Act, set forth in Civil Code section 7000 et seq.[2] (Prob. Code, § 255, subd. (d).)

The trial court found that the requisite parent-child relationship did not exist, because under Evidence Code section 621, subdivision (a) Trudy was conclusively presumed to be the daughter of David Fuller. The court therefore appointed Hettie Taylor as administratrix of Cornelious' estate.

Trudy appeals from the order denying her petition for appointment as administratrix. (See Prob. Code, § 1240.) She contends that application of the conclusive presumption of Evidence Code section 621, subdivision (a) to bar her from proving that Willis Cornelious was, in fact, her natural father, denies her due process.

The trial court held a hearing on Trudy's due process challenge to Evidence Code section 621, subdivision (a). At that hearing the following facts were established or accepted as proven:

Trudy's mother, Arzina Fuller, was married to David Fuller. They lived together as husband and wife from the time of their marriage up to the time

---

[1] Evidence Code section 621, subdivision (a) provides: "Except as provided in subdivision (b), the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage."

Subdivision (b) allows the mother or the presumed father to rebut the presumption of subdivision (a) by presenting blood test evidence of nonpaternity to the court within two years of the child's birth. These limited exceptions to the conclusiveness of the presumption were enacted in 1980 and 1981.

[2] Hall alleges that she will be able to show the existence of parent-child relationship with Cornelious by presenting evidence of a presumed relationship under Civil Code section 7004, subdivision (a)(4), which sets forth a rebuttable presumption of parentage where a man "receives the child into his home and openly holds out the child as his natural child."

of the hearing, including the time when Trudy was conceived. David Fuller was named as Trudy's father on her birth certificate. Although David was not impotent or sterile during the time of Trudy's conception, Arzina said they had not been sleeping together during that period. She stated that Willis Cornelious was Trudy's natural father. Trudy was informed of this when she was 15 years old. From that time on until Willis' death in 1980, Trudy visited him, accompanied him on errands and occasionally stayed overnight in his home. Willis identified Trudy as his daughter to his friends. Trudy continued to live as part of the Fuller household until she became emancipated. David Fuller was never told that Trudy was not his child.[3] Trudy was 27 years old and had a family of her own at the time of the hearing.

There is also evidence to prove that Trudy is not David Fuller's daughter. She has the genetic trait for sickle cell anemia; this means that either her natural mother or her natural father must carry the trait. Since neither Arzina nor David Fuller carried it, it is biologically impossible for David to be Trudy's natural father.

As noted, the trial court rejected Trudy's due process attack on the conclusive presumption of Evidence Code section 621, subdivision (a) that she was the daughter of her mother's husband. She contends that the ruling preventing her from showing a parent-child relationship with Willis Cornelious is unreasonable and a denial of due process.

"The principle established by section 621 is of great antiquity, having been a maxim of the Roman law, which was copied by the common law. (*Estate of Walker,* 180 Cal. 478, 485 [181 P. 792].) It is referred to in 2 Coke Upon Littleton, section 244a. It has been remarked in *Estate of Mills,* 137 Cal. 298, 301 [70 P. 91], that Shakespeare was familiar with the rule, for he made reference to it in King John, act I, scene 1: '*King John.—* Sirrah, your brother is legitimate; Your father's wife did after wedlock bear him; And, if she did play false, the fault was hers; Which fault lies on the hazards of all husbands That marry wives.'" (*S. D. W.* v. *Holden* (1969) 275 Cal.App.2d 313, 316 [80 Cal.Rptr. 269].)

■ The conclusive presumption of legitimacy of section 621, subdivision (a) is, of course, a rule of substantive law. (*Kusior* v. *Silver* (1960) 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657].) It codifies the principle that when husband and wife are living together as such, the integrity of the family should not be impugned. "The husband is deemed responsible for his wife's child if it is conceived while they are cohabiting; he is the *legal* father and the issue of biological paternity is irrelevant." (*Keaton* v. *Keaton*

---

[3]David Fuller died sometime after the trial court hearing.

(1970) 7 Cal.App.3d 214, 216 [86 Cal.Rptr. 562].) The rule promotes important social policies: preservation of the integrity of the family, protection of the welfare of children by avoiding the stigma of illegitimacy and keeping them off welfare rolls, and insurance of the stability of titles and inheritance. (*Kusior* v. *Silver, supra,* 54 Cal.2d at p. 619; *S. D. W.* v. *Holden, supra,* 275 Cal.App.3d at pp. 316-317; *In re Lisa R.* (1975) 13 Cal.3d 636, 650-651 [119 Cal.Rptr. 475, 532 P.2d 123]; *County of San Diego* v. *Brown* (1978) 80 Cal.App.3d 297, 303 [145 Cal.Rptr. 483].)

The conclusive presumption of Evidence Code section 621, subdivision (a) has consistently been upheld against constitutional attack despite the scientific advances that have increased the reliability of blood tests. (See *Kusior* v. *Silver, supra,* 54 Cal.2d 603; *County of San Diego* v. *Brown, supra,* 80 Cal.App.3d 297; *In re Marriage of B.* (1981) 124 Cal.App.3d 524 [177 Cal.Rptr. 429]; *Vincent B.* v. *Joan R.* (1981) 126 Cal.App.3d 619 [179 Cal.Rptr. 9].) In *Kusior,* we concluded that the Legislature's failure in 1953 to enact that part of the Uniform Act on Blood Tests to Determine Paternity (former Code Civ. Proc., §§ 1980-1980.7; now Evid. Code, §§ 890-897) which specifically would have enabled the result of a blood test to overcome the conclusive presumption of legitimacy indicated a legislative intent to stand firm on the conclusive presumption.

The presumption of legitimacy has also been the subject of much commentary and criticism. (See, e.g., Note, *California's Conclusive Presumption of Legitimacy: Jackson v. Jackson and Evidence Code section 621* (1968) 19 Hastings L.J. 963; Comment, *California's Conclusive Presumption of Legitimacy—Its Legal Effect and Its Questionable Constitutionality* (1962) 35 So.Cal.L.Rev. 437; *Recent Developments, California's Tangled Web: Blood Tests and the Conclusive Presumption of Legitimacy* (1968) 20 Stan.L.Rev. 754; Comment, *The Irrebuttable Presumption of California Evidence Code section 621* (1979) 12 U.C. Davis L.Rev. 452.) In apparent response to such commentary, the Legislature recently adopted limited exceptions which essentially take the form of a statute of limitations. In 1980 and 1981, it added subdivisions (b) through (g) to section 621, which allow the mother or the presumed father within two years of the child's birth to present blood test evidence disputing the presumed paternity. The probable rationale for this limited exception was described in a law review article: "In the case of a young child the most palpable relation that anyone has to the child is a biological relationship. The child has no personality, he can communicate with no one, and no one can be said to have exercised a formative influence on his character. But in the case of an older child the familial relationship between the child and the man purporting to be the child's father is considerably more palpable than the biological relationship of actual paternity. A man who has lived with a child, treating it as his son

or daughter, has developed a relationship with the child that should not be lightly dissolved and upon which liability for continued responsibility to the child might be predicated. This social relationship is much more important, to the child at least, than a biological relationship of actual paternity. . . . [¶] Where a strong social relationship to the child has not yet developed, the only basis for a duty on the husband's part to support the child is biological fatherhood of the child. Inasmuch as blood tests are the most reliable evidence of nonpaternity, they should be admissible on the issue of biological paternity in all cases where this issue is the recognized foundation of liability for child support—cases . . . that involve a contest over the legitimacy of a young child. . . . [¶] The adoption of a statute of limitations in lieu of the present tangle of evidentiary rules offers the obvious advantage of greatly simplifying the law and at the same time molding the law to closer conformity with the relevant policies. . . . The legislature should address itself squarely to the problem of defining a period after the birth of a child during which biological paternity will be determinative of a husband's duty to support his wife's child, and it should announce clearly that after this period has expired biological nonpaternity shall be irrelevant . . . ." (*Recent Developments, California's Tangled Web: Blood Tests and the Conclusive Presumption of Legitimacy, supra,* 20 Stan.L.Rev. at pp. 761-765; see also *In re Marriage of B., supra,* 124 Cal.App.3d at pp. 530-531.)

■ In the present case, appellant's constitutional attack on the conclusive presumption is based solely on its application to her. She contends that it denies her due process in preventing her from proving that Cornelious was her natural or biological father. She argues that her interest in doing so outweighs the state's interest in preventing her from rebutting the presumption. We do not agree.

The cases on which appellant primarily relies—*In re Lisa R., supra,* 13 Cal.3d 636 and *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]—differ significantly from the present situation. In both *Stanley* and *Lisa R.,* the putative fathers were seeking to establish their legal relationship with children who otherwise had no parents and were wards of the state. In *Stanley* it was undisputed that the putative father sired, lived with, and supported the children. Upon the mother's death, Illinois law automatically removed the children from the putative father's custody without any showing of his unfitness as a parent. The United States Supreme Court held that Stanley was constitutionally entitled to a hearing on his fitness before the children could be removed from his custody.

In *Lisa R.,* Victor sought to establish that he was the natural father of a five-year-old ward of the court whose mother and presumed father were dead. Victor had lived with Lisa's mother before and after Lisa's birth, and

his name appeared on her birth certificate. He was deprived of Lisa's custody when her mother returned to her husband and took Lisa with her. After learning that Lisa was a ward of the court, Victor sought to gain custody on the ground that he was Lisa's natural father. He was prevented from doing so by the presumption (former Evid. Code, § 661) declaring Lisa's mother's husband to be her father. Although that particular presumption could be rebutted by the husband, wife or the state, it was conclusive as to Victor.

We held that due process required allowing Victor the opportunity to rebut the presumption of parentage because the state's interest in maintaining the presumption was outweighed by Victor's substantial private interest in establishing and enjoying his relationship as Lisa's father. We found no competing private interests against Victor's claim and noted that, as in *Stanley,* the private interests which Victor sought to preserve "arose from more than the mere biological fact that he is Lisa's natural father." (13 Cal.3d at p. 649.)

In the present case, Trudy's private interests are simply not as weighty as those of the putative fathers in *Stanley* and *Lisa R.* who sought to care for and nurture their own children. Here, the alleged natural father is dead so that there is no possibility of an ongoing relationship. All Trudy can hope to gain is the right to inherit Willis' estate, an interest of a lower order which, of course, is pitted against the competing similar interests of Willis' sisters.

The state's interests, by contrast, are substantial. The policies promoted by the conclusive presumption of legitimacy are well-served by its application here. The familial relationship Trudy had with David Fuller was far more palpable than the biological relationship she had with Willis Cornelious. Trudy was reared and supported by David, who was named as her father on her birth certificate. He was never told of the present proceeding, and he died thinking he was Trudy's father. Now, after 27 years as the daughter of David Fuller, Trudy seeks to establish that another man was her father, and she does so not for reasons of filial piety but solely for financial considerations. Her equities are simply not in the same class as those of the fathers in *Stanley* and *Lisa R.* The due process clause does not compel a holding equating the natural urge to look after one's flesh and blood with the equally natural, but somewhat baser, impulse to take care of property one's biological father has failed to dispose of by will. In sum, Trudy has failed to advance a reason why the Constitution demands that the legislative judgment concerning her parentage should be voided.

The order is affirmed.

Mosk, J., Richardson, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**BIRD, C. J.**—I respectfully dissent.

In *In re Lisa R.* (1975) 13 Cal.3d 636 [119 Cal.Rptr. 475, 532 P.2d 123], cert. den. *sub nom., Porzuczek* v. *Towner,* 421 U.S. 1014 [44 L.Ed.2d 682, 95 S.Ct. 2421], this court adopted a balancing test for review of due process challenges to a conclusive presumption of paternity. That test requires a case-by-case weighing of the state's interests in maintaining the presumption against the competing private interests in rebutting it. *(In re Lisa R., supra,* 13 Cal.3d at pp. 648, 651, fn. 17.)

The majority assert that substantial state interests are promoted in this case by maintenance of the conclusive presumption in Evidence Code section 621, subdivision (a).[1] That assertion is completely without support, either in the majority's opinion or in the record. Appellant Hall has a legitimate private interest in establishing that Cornelious was her natural father. In the absence of competing state interests entitled to equal or greater weight, it is a violation of due process to deny Hall the opportunity to rebut the presumption.

The recognized interests of the state in maintaining the conclusive presumption of paternity are (1) to preserve the integrity of the family unit *(In re Lisa R., supra,* 13 Cal.3d at p. 650; *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657]); (2) to safeguard the welfare of minor children by protecting them from the stigma of illegitimacy *(In re Lisa R., supra,* 13 Cal.3d at p. 650), and by ensuring that parents fulfill their support obligations *(County of San Diego* v. *Brown* (1978) 80 Cal.App.3d 297, 303 [145 Cal.Rptr. 483]); and (3) to ensure that titles to property and rights of inheritance will not be disturbed on the basis of evidence which is scientifically unsubstantiated *(id.,* at p. 306), or which is unduly difficult to obtain *(S. D. W.* v. *Holden* (1969) 275 Cal.App.2d 313, 316-317 [80 Cal.Rptr. 269]). None of these interests are advanced by application of the conclusive presumption in this case.

First, permitting Hall to rebut the conclusive presumption would not threaten the integrity of an existing family unit. Her presumed father, Fuller, is dead. Since the family unit composed of Fuller, Hall, and Hall's mother no longer exists, it cannot be disrupted by Hall's effort to establish that Cornelious was her father. Nor would the integrity of the continuing

---

[1]Unless otherwise specified, all statutory references are to the Evidence Code.

relationship between Hall and her mother be jeopardized, since Hall's mother supports her efforts to establish that Cornelious was her natural father.

Hall commenced this proceeding without Fuller's knowledge. If Fuller had learned of her effort to prove that another man was her biological father, the integrity of their family might indeed have been threatened. However, that problem is not before this court. Fuller died without learning of this proceeding, apparently still believing that he was Hall's natural father. On these facts, the state's interest in preserving the integrity of family units is not advanced by application of the conclusive presumption.[2]

The majority appear to suggest that Hall's action impinges on some ill-defined interest of Fuller in preserving, even from his grave, the integrity of his family unit. However, this court has held that the state's interests in promoting marriage and preserving the integrity of family units are not served by application of the conclusive presumption when both the presumed father and the mother are dead. (*In re Lisa R., supra,* 13 Cal.3d at p. 650.) In this case, the presumed father is dead and the mother supports her daughter's efforts to establish her true paternity. Application of the conclusive presumption in these circumstances does nothing to preserve or promote the institutions of marriage and family.

The state's interest in providing for the support of minor children is also inapplicable in this case. Application of the conclusive presumption of paternity may be justified to prevent a man from contesting his paternity of, and responsibility to support, a minor child who was born during his marriage to the child's mother. Once the child has developed—and is conscious of—a familial relationship with the presumed father, applying the presumption against the presumed father serves to protect the welfare of the child. (*In re Marriage of B.* (1981) 124 Cal.App.3d 524, 530-531 [177 Cal.Rptr. 429].) This is true regardless of whether the man who has acted as a father is in fact the biological father. (See *ibid.*)

Here, however, the conclusive presumption is challenged not by the presumed father, but by the child, who is a married adult. The state's interest

---

[2]Even if Fuller had learned of this proceeding and a disruption of family relations had resulted, Hall's interest might well have outweighed the state's interest in preserving the integrity of family units. The Legislature has already recognized that, once a child becomes an adult, the state's interest in preserving the family unit is diminished. For example, an adult may sever the parental relationship by electing to be adopted, even without the consent of the natural parents, by any person older than the adoptee. (See Civ. Code, § 227p, subd. (a); compare Civ. Code, § 224 [consent of parents generally required for adoption of minor child].) Thus, where an adult is concerned, the state in its own laws does not recognize the interest the majority purport to protect.

in providing minor, dependent children with a father's support is not implicated by Hall's attempt to establish her true paternity.

Similarly, the policy of protecting children from the stigma of illegitimacy does not apply to an adult "child's" voluntary and informed challenge to the conclusive presumption of paternity. An adult who voluntarily chooses to place her own legitimacy in question is capable of making an informed, mature choice to accept any attendant risks, and should be permitted to do so.

Finally, the majority suggest in passing that the conclusive presumption of paternity advances a state interest in ensuring the stability of titles and inheritance. (Majority opn., *ante,* at p. 465.) This pronouncement is apparently based on two decisions of the Court of Appeal: *County of San Diego* v. *Brown, supra,* 80 Cal.App.3d 297 and *S. D. W.* v. *Holden, supra,* 275 Cal.App.2d 313. Neither case actually turned on a question of title or inheritance, and neither is applicable to the facts of this case.

*Brown* was a county action to compel payment of child support. The child was conceived while the defendant, who was not impotent, was cohabiting with his wife. The parents later separated. The defendant made an offer of proof that it was "racially impossible" that he was the child's father, since his wife and child were white and he was black. The trial court, applying the conclusive presumption of paternity in section 621, barred receipt of the proffered evidence. The Court of Appeal affirmed. Without citation to any authority, the court stated that "the stability of titles to property and rights of inheritance" should not be disturbed "by scientifically unsubstantiated genetic assertions." (80 Cal.App.3d at p. 306.)

In the present case, the trial court assumed, for purposes of its ruling on the conclusive presumption issue, that Hall could prove by reliable scientific evidence that Fuller was not her biological father. Thus, *Brown* is inapposite here.

In *S. D. W.* v. *Holden, supra,* 275 Cal.App.2d 313, the Court of Appeal reversed a judgment entered after a jury trial in a paternity action. The jury determined that the defendant was the father and was responsible for the support of a minor child born during the mother's marriage to another man. In reversing, the Court of Appeal held that the trial court had erroneously admitted certain evidence offered to prove that the husband could not be the biological father. (275 Cal.App.2d at p. 315.) Admission of the evidence was considered erroneous since the husband should have been conclusively presumed to be the child's father under section 621. (*Id.,* at pp. 314-317.)

The impact of the presumption on matters of inheritance was touched upon by the *Holden* majority in response to a point raised by the dissent. The dissent argued that the defendant should be required to supply proof of the potency of the husband in order to rely on the conclusive presumption. (*Id.*, at pp. 319-320 (dis. opn. of Christian, J.).) The majority disagreed. Although no issue of inheritance was presented by the facts of the case, the majority expressed concern that proof that a deceased husband had not been impotent at the time of the child's conception would often be unavailable due to the passage of time. (*Holden, supra,* 275 Cal.App.2d at p. 317.) In addition, the court noted that such evidence—when it was available—would often be uncertain and speculative, and that its intimate nature would present "opportunities for recrimination, fraud and blackmail." (*Ibid.*)

Those concerns are irrelevant here. Hall does not seek to rebut the presumption that Fuller was her father by proof that he was impotent. Rather, she seeks to present reliable scientific evidence relating to the genetic trait for sickle cell anemia.

In any event, the state's interest in ensuring the stability of rights of inheritance is adequately protected by various provisions of the Probate Code which require the prompt assertion and determination of claims of heirship and entitlements to distribution of estates. (See Prob. Code, §§ 1025.5, 1080, 1082.) The state's interest is in promoting orderly distribution of estates in accordance with the order of succession required by Probate Code section 200 et seq. It has no interest in preventing any particular person from establishing that he or she is a member of one of the statutory classes entitled to inherit. It makes little sense to erect an additional barrier to a child's claim that she is an heir entitled to distribution of an estate. The comprehensive statutory scheme specifically provides for such a claim and restricts any potential destabilizing effect that may result from its assertion.

The majority also suggest that Hall's claim to the Cornelious estate must be weighed against the competing private interests of Cornelious' sisters. While such a weighing of competing private interests is proper, only those interests which *outweigh* those asserted by the person seeking to rebut the presumption should prevail. (See *Vincent B.* v. *Joan R.* (1981) 126 Cal.App.3d 619, 625-626 [179 Cal.Rptr. 9], app. dism. (1982) 459 U.S. 807 [74 L.Ed.2d 45, 103 S.Ct. 31]. In the distribution of intestate estates, the Legislature has determined that public policy favors distribution to the closest relative. (See Prob. Code, § 200 et seq.) In light of that public policy, appellant Hall's interest in the estate appears to outweigh the interests of Cornelious' sisters.

The majority devote considerable space to a discussion of the recently adopted exceptions to the conclusive presumption of paternity in section 621. (Majority opn., *ante,* at pp. 465-466.) Those exceptions permit the mother or the presumed father to rebut the presumption by blood test evidence. The majority place particular stress on the statute of limitations applicable to those exceptions, which requires that the blood test evidence be offered within two years of the child's birth. (§ 621, subds. (c) & (d).) The policies supporting the two-year limitation period concern the continuity of parental care and support of minor children—concerns that arise most often in the context of a presumed father's effort to deny his paternity and avoid support obligations. (See *Recent Developments, California's Tangled Web: Blood Tests and the Conclusive Presumption of Legitimacy* (1968) 20 Stan.L.Rev. 754, 761-765.) Those policies have no relevance here, where an adult "child" seeks to establish her true paternity and where parental care and child support are not in issue.

The majority stress the relatively weak private interest of appellant Hall, who seeks only to inherit property and not to establish the legal basis for an ongoing parent-child relationship. I object to characterizing her attempt to establish that Cornelious was her natural father as one undertaken "not for reasons of filial piety but solely for financial considerations. . . ." and as the product of a "somewhat baser" impulse. Those gratuitous remarks fail to take into account Hall's offer of proof that she developed a social relationship with Cornelious after being told as a teenager that he was her natural father. They also unfairly denigrate her desire to establish her true paternity, a desire no less legitimate because the most tangible benefit to be obtained is an inheritance.

Hall has a legitimate private interest in establishing that Cornelious was her natural father. The alleged state interests supporting application of the conclusive presumption of paternity do not outweigh her private interest. Under this court's holding in *In re Lisa R., supra,* 13 Cal.3d 636, it is a violation of due process to deny her the opportunity to rebut this presumption. Accordingly, I would reverse the judgment.