[No. B185726. Second Dist., Div. Six. Jan. 16, 2007.]

Estate of GREGORY ALLEN BURDEN, Deceased.
TARA BURDEN, Petitioner and Appellant, v.
DALE AGNEW, Objector and Respondent.

## Counsel

Rosenmund, Baio & Morrow, Hemal K. Master and Michael A. Morrow for Petitioner and Appellant.

Harper & Associates, Tamara Lynn Harper; Lascher & Lascher and Wendy Cole Lascher for Objector and Respondent.

## Opinion

**PERREN, J.**—Probate Code section 6453, subdivision (b)(2)[1] permits a child born out of wedlock to establish a father-child relationship for intestate succession purposes by providing clear and convincing evidence that the father "has openly held out the child as his own." In this case of first impression, we conclude that evidence of decedent's acknowledgments of respondent as his son during his lifetime are sufficient to meet the burden imposed by section 6453, subdivision (b)(2). We affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Appellant Tara Burden appeals from an order of the probate court finding that respondent Dale Agnew, her half brother, is entitled to an equal share of

---

[1] All statutory references are to the Probate Code unless otherwise indicated.

the estate of their father, Gregory Allen Burden, under the laws of intestate succession. The court found by clear and convincing evidence that Gregory "openly held out" Dale as his son.[2]

Dale is the son of Gregory Burden and Sally Routt. When Gregory found out that Sally was pregnant, he did not deny fatherhood and proposed marriage. Sally refused Gregory's offer. Sally married Chris Agnew a few months before Dale's birth in October 1971. Dale's birth certificate names Chris as Dale's father, and Chris supported Dale as if Dale were his own child. The parties do not dispute that Gregory is Dale's biological father.

Tara is the daughter of Gregory and Linda Eve Burden. At the time of Tara's birth in December 1981, Gregory and Linda were married and living in California. Gregory and Linda divorced in 1985. Linda received full custody of Tara, and Gregory was given visitation rights. Tara maintained a close relationship with Gregory until his death in August 2004.

Sally did not inform Dale that Gregory was his biological father until September or October 1989, when Dale was 18 years old. During those 18 years, neither Sally nor Dale had any contact with Gregory or any member of his family. After telling Dale that Gregory was his father, Sally took Dale to meet Gregory's mother, Helen; brothers, Kerry and Michael; and sisters, Joyce and Robin.

Shortly after meeting Gregory's family, Dale called Gregory and spoke to him for the first time. Gregory apologized to Dale "for not being there . . . for being . . . an inactive father." Gregory told Dale that he had a half sister, Tara. However, Gregory did not want Tara to know that Dale was her half brother and refused to allow Dale to come to California and meet her.

Dale next spoke to Gregory in January or February 1990. Dale called Gregory after Gregory returned a photo album containing pictures of Dale that Sally or Helen had sent to him. In that conversation, Gregory mentioned a family resemblance between Dale and himself and between Dale and Tara. Gregory sent a letter to Sally with the photo album. In the letter, Gregory again stated he did not want to become involved in Dale's life.

Dale spoke to Gregory for the last time when Dale called him in 1995 after graduating from college to ask him for help getting into Navy flight school.

After Dale met Gregory's relatives, Dale developed a close relationship with them. Since 1998, he has lived next door to Gregory's mother, Helen, in

---

[2] For the reader's convenience we will use first names in referring to the parties and others.

Ohio, and within 25 miles of Gregory's two brothers and two sisters. Helen and Gregory's brothers babysat Dale's children. Dale testified that everyone in the family knew that Dale was Gregory's son, except Tara. Tara was told of Dale's existence in 1991.

Gregory's brother, sister, and mother all testified that Gregory did not deny being Dale's father. Gregory had minimal contact with his family in Ohio, except that he and his sister, Joyce, had occasional e-mail contact. Joyce and Gregory discussed Dale in three or four e-mails. On February 8, 2004, Gregory sent an e-mail to Joyce replying to one she had sent. After talking at length about Tara, he stated: "Congrats on future grandkids-I say better everyone else than I. Although I am aware that I am told I have two by DA [Dale Agnew] only the future knows if any relationship will ever occur. It is not high on my priority list and may be to another unfair but I have only been a party to conception and by my own choosing. DA has sent pictures and I wish I could say I was the proud grandpa to set them out for display but I have yet to feel the paternal pull in that direction."

Dale sent Gregory greeting cards with pictures of his children, e-mails, father's day cards, birth announcements and a wedding invitation. Gregory did not respond to any of them.

## DISCUSSION

### Standard of Review

The parties dispute the standard of review. Tara argues the issue before the court is one of law which the court reviews de novo. Dale argues the question is one of fact subject to the more deferential substantial evidence standard of review. Recent cases from our Supreme Court have not been consistent.

In *Estate of Griswold* (2001) 25 Cal.4th 904 [108 Cal.Rptr.2d 165, 24 P.3d 1191], the court interpreted section 6452, a section closely related to the statute we construe here. Section 6452 is the converse of section 6453, subdivision (b), entitling a parent to inherit from an out-of-wedlock child if the parent can show that he "acknowledged" the child during his lifetime. The Supreme Court reviewed the issue as one of law. (*Griswold*, at p. 907.)

In *Estate of Joseph* (1998) 17 Cal.4th 203 [70 Cal.Rptr.2d 619, 949 P.2d 472], the court interpreted another closely related provision of the Probate Code, section 6454, on undisputed facts. Section 6454 entitles a foster child or stepchild to inherit from a deceased foster parent or stepparent if the foster child or stepchild establishes by clear and convincing evidence that the foster parent or stepparent would have adopted the foster child or stepchild but for a legal barrier.

Regarding the standard of review, the court held that the existence of a "legal barrier" was a question of law reviewed independently because "it resolves a pure question of law, viz., the meaning of the provision in question." (*Estate of Joseph, supra,* 17 Cal.4th at pp. 216–217.) The court then held that the probate court's finding that the petitioner failed to establish by clear and convincing evidence that the decedent would have adopted her but for a legal barrier was reviewed for substantial evidence. The court said: "It resolves a *mixed question of law and fact that is nonetheless* predominantly one of fact, inasmuch as it 'requires application of experience with human affairs . . . .' " (*Id.* at p. 217.)

More recently, our colleagues in the Sixth District interpreted a related section of Family Code section 7611, subdivision (d), which defines a "presumed father" as a man who " 'receives the child into his home and openly holds out the child as his natural child.' " (*Librers v. Black* (2005) 129 Cal.App.4th 114, 117 [28 Cal.Rptr.3d 188].) In discussing the standard of review, the court said: "The question before us . . . calls for statutory interpretation . . . . Statutory interpretation is a question of law, which appellate courts review de novo. [Citations.] Initially, however, that question also calls for an examination of the underlying factual predicate for application of the statutes. Because we find that the relevant evidentiary record on that point is both sufficient and undisputed, our review is de novo. [Citation.] We therefore independently review all aspects of the case before us, including the determination that a factual predicate exists for application of sections 7630, subdivision (b) and 7611, subdivision (d)." (*Id.* at p. 124.)

We agree with the reasoning in *Estate of Joseph, supra,* 17 Cal.4th 203 and review the trial court's finding that Dale established by clear and convincing evidence that decedent openly held out Dale as his own child under the substantial evidence standard.

### *Interpretation of Section 6453, Subdivision (b)(2)*

Section 6450 et seq. contains the rules for determining whether there is a parent-child relationship for purposes of inheritance by intestate succession. Section 6450, subdivision (a) states that the "relationship of parent and child exists between a person and the person's natural parents, regardless of the marital status of the natural parents."

Section 6453 contains the rules for determining who is a "natural parent." As relevant here, section 6453 states:

"(a) A natural parent and child relationship is established where that relationship is presumed and not rebutted pursuant to the Uniform Parentage Act (Part 3 (commencing with Section 7600) of Division 12 of the Family Code).

"(b) A natural parent and child relationship may be established pursuant to any other provisions of the Uniform Parentage Act, except that the relationship may not be established by an action under subdivision (c) of Section 7630 of the Family Code unless any of the following conditions exist: [¶] . . . [¶]

"(2) Paternity is established by clear and convincing evidence that the father has openly held out the child as his own."

Dale asserts, and the trial court agreed, that he is entitled to one-half of Gregory's estate because he has submitted clear and convincing evidence that Gregory openly held him out as his own child pursuant to section 6453, subdivision (b)(2). Tara asserts that a showing greater than that made by Dale is necessary to meet the requirements of the statute.

■ We begin our analysis by applying established principles of statutory construction. The first and foremost rule is that the court must attempt to ascertain the Legislature's intent so as to effectuate the purpose of the law. (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) We look to the words of the statute itself, giving significance to every word, phrase, sentence and part of an act in furtherance of the legislative purpose if possible. (*People v. Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].) We must construe the statutory language in context, and the various parts of a statute "must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Ibid.*) "The legislative history as well as the historical circumstances of a statute's enactment may be considered in ascertaining the Legislature's intent." (*People v. Wesley* (1988) 198 Cal.App.3d 519, 522 [243 Cal.Rptr. 785].)

The purpose of the intestate succession provisions of the Probate Code is " 'to carry out . . . the intent a decedent without a will is most likely to have had,' evidently at the time of death, and to do so in a 'more efficient and expeditious' manner." (*Estate of Joseph, supra,* 17 Cal.4th at p. 209, quoting from Tent. Recommendation Relating to Wills and Intestate Succession (Nov. 1982) 16 Cal. Law Revision Com. Rep. (1982) pp. 2318, 2319.) The legislative history of section 6453, subdivision (b)(2) indicates that the clear and convincing evidence standard is "to discourage dubious paternity claims made after a father's death for the sole purpose of inheritance." (*Estate of Sanders* (1992) 2 Cal.App.4th 462, 474 [3 Cal.Rptr.2d 536].)

Section 6453, subdivision (b)(2)'s predecessor, former section 6408, subdivision (f)(2), required paternity to be established "by clear and convincing evidence that the father has openly and notoriously held out the child as his own." When the statute was renumbered and amended in 1993, the Legislature omitted "and notoriously" and now requires only that the father have "openly held out" the child as his own. (23 Cal. Law Revision Com. Rep. (1993) p. 1011.)

The parties have not cited nor have we found a case construing section 6453, subdivision (b)(2). However, we are not without guidance. We must interpret a statute in context, examining other legislation on the same or similar subjects to ascertain the Legislature's probable intent. We may gain insight into the intended meaning of a phrase or expression by examining use of the same or similar language in other statutes. (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741].)

One of the presumptions in the Family Code referred to in subdivision (a) of section 6453 contains language identical to that in subdivision (b)(2). Family Code section 7611, subdivision (d) provides that a man is presumed to be the father of a child if he "receives the child into his home and openly holds out the child as his natural child."

Numerous appellate opinions, including one from this court, have interpreted Family Code section 7611, subdivision (d)'s use of the term "acknowledge" as a synonym for "openly holds out." (See, e.g., *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 938 [72 Cal.Rptr.2d 871, 952 P.2d 1139]; *In re Salvador M.* (2003) 111 Cal.App.4th 1353, 1357 [4 Cal.Rptr.3d 705]; *Brian C. v. Ginger K.* (2000) 77 Cal.App.4th 1198, 1219, 1221 [92 Cal.Rptr.2d 294]; *In re Julia U.* (1998) 64 Cal.App.4th 532, 541 [74 Cal.Rptr.2d 920]; *In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1652 [56 Cal.Rptr.2d 524]; *In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1226 [30 Cal.Rptr.2d 893].)

We conclude from this consensus that "openly holds out" is synonymous with "acknowledge." Therefore, we look at a second closely related statute containing the term "acknowledge" and the cases construing it. (*Quarterman v. Kefauver, supra,* 55 Cal.App.4th at p. 1371.)

Section 6452 states: "If a child is born out of wedlock, neither a natural parent nor a relative of that parent inherits from or through the child on the basis of the parent and child relationship between that parent and the child unless both of the following requirements are satisfied: [¶] (a) The parent or a relative of the parent acknowledged the child. [¶] (b) The parent or a relative of the parent contributed to the support or the care of the child."

■ Two cases have interpreted the acknowledgment requirement in section 6452, subdivision (a). In *Lozano v. Scalier* (1996) 51 Cal.App.4th 843, 848 [59 Cal.Rptr.2d 346], the court rejected the contention that the acknowledgement must be a witnessed writing made after the child was born. "There are no such requirements on the face of the statute. Nor does the history of the statute compel a conclusion that such requirements should be read into the statutory language. . . . We may properly assume that if the Legislature had intended to impose a requirement that the acknowledgment be in writing, signed in the presence of witnesses, or made after the birth of the child, that the Legislature would have said so." (*Ibid.*)

In *Estate of Griswold, supra,* 25 Cal.4th 904, the Supreme Court affirmed a decision of this court interpreting section 6452. After noting that "acknowledge" is nowhere defined in the Probate Code, the court resorted to the common meaning of the word as defined in Webster's New World Dictionary (2d ed. 1982) at page 12, and Webster's Third New International Dictionary (1981) at page 17, as follows: " '[T]o show by word or act that one has knowledge of and agrees to (a fact or truth) . . . [or] concede to be real or true . . . [or] admit.' " (*Griswold,* at p. 911.)

The Supreme Court held the acknowledgement requirement was met because the stipulated facts showed that the decedent's father admitted paternity in a court proceeding. The court found significant the absence of evidence indicating the father did not confess knowingly and voluntarily, or that he later denied paternity or knowledge of the child to those who were aware of the circumstances. Although the record established that the father did not speak of the decedent to his wife and other child, there was no evidence suggesting he sought to actively conceal the facts from them or anyone else. The court concluded: "Under the plain terms of section 6452, the only sustainable conclusion on this record is that [father] acknowledged [decedent]." (*Estate of Griswold, supra,* 25 Cal.4th at p. 911; see also *Estate of Baird* (1924) 193 Cal. 225, 276 [223 P. 974] ["A distinction will be recognized between a mere failure to disclose or publicly acknowledge paternity and a willful misrepresentation in regard to it; in such circumstances there must be no purposeful concealment of the fact of paternity"].)

■ The *Griswold* court also held that section 6452 should not be read to require that a father have personal contact with his out-of-wedlock child, make purchases for the child, receive the child into his home and other family, or treat the child as he does his other children. (*Estate of Griswold, supra,* 25 Cal.4th at p. 917.)

■ Here, Gregory did more than privately acknowledge that Dale was his son. As noted by the trial court: "This was proven to the standard of 'clear

and convincing evidence' by Greg Burden's written acknowledgement that he was a 'party to conception'; his having asked Dale's mother Sally . . . to marry him; and his admissions to his own mother, brother and sister as well as to Dale and Dale's mother that Dale was his son."

Our interpretation of section 6453, subdivision (b)(2) furthers the statute's legislative purpose. Dale's paternity claim is not "dubious." Although Gregory only grudgingly admitted paternity, he did so on a number of occasions to a number of people, both orally and in writing. This satisfies section 6453, subdivision (b)(2).

■ Whether or not Gregory would have wanted Dale to inherit is irrelevant. The trial court correctly held that "[t]he law of intestacy . . . disregards such evidence of intimacy and lack of intimacy. A decedent who fails to designate inheritance of his assets by a written last testament, is presumed to have known that the laws of intestacy will apply to his estate. [Citation.] For purposes of intestacy, the statutory provisions on inheritance control." (See *Estate of Dye* (2001) 92 Cal.App.4th 966, 980 [112 Cal.Rptr.2d 362] ["The intestacy laws by their nature will defeat many 'true' intentions. [The d]ecedent could have prevented such 'injustice,' if any, by making a . . . will"].)

■ Our interpretation of section 6453, subdivision (b)(2) makes it unnecessary to decide whether the trial court erred in admitting evidence of DNA testing. We note, however, that the right to intestate succession in California "does not turn on the judicial determination of paternity, but rather on the factual question whether or not he was acknowledged by [his father] in the prescribed statutory fashion." (*Estate of Ginochio* (1974) 43 Cal.App.3d 412, 416 [117 Cal.Rptr. 565]; see also *id.* at pp. 416–417 [interpreting former section 255].)

More recently, in *Estate of Sanders, supra,* 2 Cal.App.4th 462, the court denied the request of an illegitimate child to order that DNA samples be taken to establish entitlement to a portion of the putative father's estate under the immediate predecessor to section 6453, subdivision (b)(2), former section 6408, subdivision (c)(2). The court said: "[S]ubdivision (c)(2)—by its very language—does not provide an alternative means of establishing a natural parent-child relationship or paternity." (*Sanders,* at p. 471.)

■ The Legislature has amended section 6453, subdivision (b)(2) since the *Sanders* opinion, but only to eliminate the "and notoriously" language. It is a basic rule of statutory construction that the Legislature is aware of court opinions existing at the time it amends legislation. The fact that the Legislature did not amend the statute to allow DNA tests to establish a right to

intestate succession indicates that the Legislature did not want to make such an amendment. (*People v. Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].)

The order is affirmed. Costs are awarded to respondent.

Yegan, Acting P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 9, 2007, S150507.