[No. B200639. Second Dist., Div. Six. Jan. 27, 2009.]

Estate of TED WILL, Deceased.
CAROL ANDERSON, as Trustee, etc., Petitioner and Appellant, v.
LORI TINSLEY, as Administrator, etc., Objector and Respondent.

COUNSEL

Myers, Widders, Gibson, Jones & Schneider, Katherine E. Stone and J. Roger Myers for Petitioner and Appellant.

Norman Dowler, Richard M. Norman; Arnold, Bleuel, LaRochelle, Mathews & Zirbel and Matthew P. Guasco for Objector and Respondent.

OPINION

**GILBERT, P. J.**—In probate matters, justice can be illusive if not absent. In *Estate of Shellenbarger* (2008) 169 Cal.App.4th 894 [86 Cal.Rptr.3d 862], we acknowledged our obligation to follow the law of succession even when we believed to do so was unfair. We had no choice in light of our Supreme Court's admonition that it is vain for the courts to argue against the injustice of statutory rules governing the law of succession. (*Estate of De Cigaran* (1907) 150 Cal. 682, 688 [89 P. 833].)

But in the case we decide here, the Probate Code itself gives the probate judge discretion to reach a fair result. A good deed finds its reward, not its punishment.

Carol Anderson, trustee of the Gertrude Will Revocable Trust, appeals an order determining that Gertrude Will is not an omitted spouse in the trust or estate of decedent Ted Will. (*Estate of Gagnier* (1993) 21 Cal.App.4th 124, 128–129 [26 Cal.Rptr.2d 128]; Prob. Code, § 140 et seq.)[1] We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

On April 13, 1980, Ted Will executed a will and trust, declaring that he was divorced and had five children, including respondent Lori Tinsley. Many years later, Ted became reacquainted with his high school classmate, Gertrude Fochs, a widow with five adult children. Ted and Gertrude later lived together in his Ventura home. Ted had acquired substantial real properties in Ventura and elsewhere. Gertrude assisted him with accountings of income from his real properties and stock holdings.

Ted, then 81 years old, and Gertrude, then 80 years old, decided to marry. Gertrude suffered from lung cancer, and Ted intended to obtain medical insurance and treatment for her. They contemplated that she would not survive Ted due to her illness.

On October 1, 2003, Ted and Gertrude visited Grover Howe, Ted's longtime attorney. Ted presented Gertrude with a prenuptial agreement drafted by another attorney. The agreement provided that Ted and Gertrude waived their respective community property interests and inheritance rights in each other's property. It also provided that the separate property of each party would pass to his or her children, but that Gertrude could live in Ted's home for five years rent free after his death. The agreement contained schedules listing the assets of each party. Gertrude later described the prenuptial agreement as "he keeps his assets, I keep mine."

Howe read and explained each provision of the prenuptial agreement to Ted and Gertrude and answered their questions. He also informed Gertrude that he was Ted's attorney and was not representing her. Howe offered to obtain independent counsel at Ted's expense for Gertrude. She declined the offer and stated that she had read the agreement. Ted and Gertrude executed the document after leaving Howe's office.

---

[1] All further statutory references are to the Probate Code unless stated otherwise.

[2] We refer to the parties by their first names not from disrespect, but to ease the reader's task.

The following day, Ted and Gertrude married. During the marriage, the parties filed separate income tax returns, maintained their separate properties, and did not acquire any community property or hold joint bank accounts.

The uncertainty of human expectations became apparent when, two years after the marriage, Ted died, leaving Gertrude the survivor. He had not amended his 1980 will and trust nor had he executed another will and trust after his marriage to Gertrude.

Gertrude later filed a petition in the probate of Ted's estate contending that she is an omitted spouse. She sought a one-third statutory interest in Ted's trust and estate pursuant to section 21610, subdivision (c). Gertrude asserted that the prenuptial agreement is unenforceable because it did not comply with the specific requirements of Family Code section 1615 concerning advice of independent counsel, seven days' advance notice of the agreement, and a separate written explanation of property rights relinquished. Lori, the administrator of Ted's estate, conceded that circumstances surrounding execution of the prenuptial agreement did not meet the specific requirements of Family Code section 1615, subdivision (c).

The probate court determined that the prenuptial agreement was independently enforceable pursuant to Probate Code, division 2, part 3, Contractual Arrangements Relating to Rights at Death, chapter 1, Surviving Spouse's Waiver of Rights. (§ 140 et seq.) It also found that the agreement represented the parties' mutual intentions, it was fair and reasonable, Gertrude knew the extent and nature of Ted's financial affairs at the time, and it would be inequitable not to honor the waiver. The probate court then concluded that Gertrude was not entitled to a statutory share of Ted's trust or estate.

Gertrude appeals and contends that the inheritance waiver is unenforceable because the prenuptial agreement does not comply with Family Code section 1615.[3]

## DISCUSSION

Gertrude points out that Family Code section 1615, subdivisions (a) and (c) state that a prenuptial agreement is unenforceable without meeting the specific requirements of subdivision (c)(1) through (3).[4]

---

[3] Gertrude died several months after filing the notice of appeal. We granted an order substituting her daughter, Carol Anderson, trustee of the Gertrude Will Revocable Trust, as appellant. This lawsuit is now between the respective heirs of Ted and Gertrude.

[4] As relevant here, Family Code section 1615 provides: "(a) A premarital agreement is not enforceable if the party against whom enforcement is sought proves either of the following: [¶] (1) That party did not execute the agreement voluntarily. [¶] . . . [¶] (c) For the purposes of

Gertrude argues that the more specific provisions of Family Code section 1615 override the provisions of the Probate Code regarding inheritance waivers. She adds that section 147, subdivision (c) provides that "the validity and effect of [a] premarital property agreement shall be determined by the law otherwise applicable to the premarital property agreement."

■ Statutory interpretation is a question of law that we independently review. (*Estate of Burden* (2007) 146 Cal.App.4th 1021, 1026 [53 Cal.Rptr.3d 390].) In this task, we are mindful of the presumption against a repeal by implication. (*Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 419 [261 Cal.Rptr. 384, 777 P.2d 157].) " 'To overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' " (*Id.* at pp. 419–420.) Judicial decisions also conclude that an implied repeal should not be found unless the later statute gives " '*undebatable evidence*' " of its intent to supersede the earlier statute. (*Id.* at p. 420.)

■ Section 21610 provides that, if a testator fails to provide by will for a surviving spouse who married the testator after execution of the will, the omitted spouse will receive a prescribed share of the estate. Section 21611, subdivision (c) provides that this right shall be waived by "a valid agreement waiving the right to share in the decedent's estate." " 'Public policy discourages a testator's failure to provide for a surviving spouse [citation], but it does not nullify that failure when the testator and spouse have mutually

---

subdivision (a), it shall be deemed that a premarital agreement was not executed voluntarily unless the court finds in writing or on the record all of the following: [¶] (1) The party against whom enforcement is sought was represented by independent legal counsel at the time of signing the agreement or, after being advised to seek independent legal counsel, expressly waived, in a separate writing, representation by independent legal counsel. [¶] (2) The party against whom enforcement is sought had not less than seven calendar days between the time that party was first presented with the agreement and advised to seek independent legal counsel and the time the agreement was signed. [¶] (3) The party against whom enforcement is sought, if unrepresented by legal counsel, was fully informed of the terms and basic effect of the agreement as well as the rights and obligations he or she was giving up by signing the agreement . . . . The explanation of the rights and obligations relinquished shall be memorialized in writing and delivered to the party prior to signing the agreement. The unrepresented party shall, on or before the signing of the premarital agreement, execute a document declaring that he or she received the information required by this paragraph and indicating who provided that information."

contracted to waive such provision.' " (*Estate of Gagnier, supra,* 21 Cal.App.4th 124, 127.)

■ Sections 140 through 147 concern a surviving spouse's waiver of inheritance rights. Section 147, subdivision (c) permits a waiver "made under this chapter [Surviving Spouse's Waiver of Rights] by a person intending to marry" to be enforced. (*Estate of Gagnier, supra,* 21 Cal.App.4th 124, 130 [waiver may be valid and enforceable under family or probate law].)

■ Section 142, subdivision (a) requires a waiver of inheritance rights to be in writing and signed by the surviving spouse. Subdivision (b) of that section states that a waiver must also comply with the requirements of section 143 or 144. Pertinent here, section 144 provides that a waiver is enforceable if the probate court determines either that the waiver at the time of signing made a fair and reasonable disposition of the rights of the surviving spouse, or that the surviving spouse had adequate knowledge of the property of the decedent, and the decedent did not violate any fiduciary duty to the spouse. Here the waiver is written, was signed by Gertrude, and it complies with the requirements of section 144.

■ In enacting Family Code section 1615, the Legislature did not mention Probate Code section 140 et seq. regarding premarital inheritance waivers by surviving spouses. This omission implies that the Legislature intended that omitted spouse waivers continue to be governed independently by the Probate Code. Moreover, the two statutory schemes are not so inconsistent or irreconcilable that they cannot have concurrent operation. (*Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist., supra,* 49 Cal.3d 408, 419.) Each scheme primarily concerns fair and reasonable disclosure of property at the time the premarital agreement or inheritance waiver was executed. The statutory framework of the Family Code and the Probate Code concerning inheritance waivers seeks to safeguard the rights of surviving spouses by similar disclosures and protections.

We have granted Gertrude's requests for judicial notice of a report from the Governor's Office of Planning and Research regarding the purposes of Family Code section 1615, as well as estate planning legal forms regarding inheritance waivers. Neither discusses section 140 et seq. and they are not persuasive regarding the issues on appeal.

In her reply brief, Gertrude raises issues regarding the interpretation of the prenuptial agreement. We do not discuss these issues; they were not presented to the probate court nor discussed in the opening brief.

The order is affirmed. Respondent is to recover costs.

Yegan, J., and Perren, J., concurred.

A petition for a rehearing was denied February 18, 2009, and appellant's petition for review by the Supreme Court was denied April 15, 2009, S170945.