Filed 1/30/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ESTATE OF RAUL SAUSEDO FRANCO, DECEASED. | |
| ROBERTA MORENO, et al., <br><br> Petitioners and Respondents, <br><br> v. <br><br> TAMARA L. BERTUCCIO, as Special Administrator, <br><br> Objector and Appellant. | A165840 <br><br> (Santa Clara County Super. Ct. No. 18PR182626) |

In this probate proceeding, petitioners and respondents Roberta Moreno and Cynthia Moreno ("the Morenos") filed a joint motion for summary judgment seeking a determination that Frank G. Bertuccio ("Bertuccio")[1] was not an heir entitled to an intestate share of the Estate of Raul Sausedo Franco, also known as Roy Raul Hector Franco ("Franco").

The probate court granted the motion for summary judgment. The court found Bertuccio to be the child of a marriage between his mother

---

[1] Bertuccio died during the pendency of the litigation in the probate court. Bertuccio's half-sister, Tamara L. Bertuccio, was appointed special administrator of Bertuccio's estate and substituted in as a party to the proceeding. For ease of convenience, we refer to Bertuccio and his estate collectively as "Bertuccio." Because some of the persons referred to in this opinion have the same last name, we use first names for clarity and by doing so intend no disrespect.

1

Marilyn and Frank C. Bertuccio, Senior ("Frank, Sr.") under the marital presumption set forth in Family Code section 7540, subdivision (a), which provides, in pertinent part, that "the child of spouses who cohabited at the time of conception and birth is conclusively presumed to be a child of the marriage." Based on that finding, the court then held Bertuccio, as the child of the marriage of Marilyn and Frank, Sr., was not entitled to prove Franco was his natural parent from whom he could inherit in intestate succession under Probate Code section 6453, subdivision (b)(2).[2]

As a preliminary matter, we agree with the probate court that our Supreme Court's decision in *Estate of Cornelious* (1984) 35 Cal.3d 461 (*Cornelious*) remains good law. Hence, if Bertuccio were found to be a child of the marriage of Marilyn and Frank, Sr. pursuant to the Family Code section 7540 marital presumption, he would not be entitled to prove Franco was his natural parent under Probate Code section 6453, subdivision (b)(2).

However, we find the probate court erred in applying the Family Code section 7540 marital presumption without first making the requisite finding that Marilyn and Frank, Sr. were cohabiting at the time of Bertuccio's conception and birth. We shall therefore reverse the order granting summary judgment and remand the matter for further proceedings consistent with this opinion.

**FACTUAL AND PROCEDURAL BACKGROUND**[3]

In December 1957, Marilyn and Frank, Sr. were married. Frank, Sr. was listed on Bertuccio's birth certificate as the father, accepted Bertuccio

---

[2] For clarity, the opinion will use full statutory references to the sections of the Family Code and Probate Code.

[3] At the request of the Morenos, and without objection, the probate court took judicial notice of certain documents including (1) Franco's death certificate and (2) an October 18, 2018 declaration filed by Bertuccio in this probate proceeding. At the request of the Morenos, and over the objection of

into his home, and held Bertuccio out as his own. Marilyn and Frank, Sr. separated in September 1966 and were granted an interlocutory judgment of divorce in March 1967. A final judgment of divorce was filed in November 1967. As part of the interlocutory judgment of divorce incorporated in the final judgment of divorce, Bertuccio was identified as their minor child and Frank, Sr. was directed to pay child support. Marilyn subsequently secured an order increasing the child support to be paid by Frank, Sr.

In the mid-1980's, when Bertuccio was an adult, he confronted his mother about his parentage. Marilyn allegedly told him that Franco was his biological father. Marilyn stated that during the marriage she and Frank, Sr. had a "falling out [and] separated" and Marilyn subsequently dated Franco. During her pregnancy with Bertuccio, Marilyn reunited with Frank, Sr.

---

Bertuccio, the probate court also took judicial notice of (1) Bertuccio's birth certificate; (2) the complaint for divorce filed by Frank, Sr; (3) the answer to the complaint for divorce filed by Marilyn; (4) and (5) the interlocutory judgment of divorce and the final judgment of divorce between Marilyn and Frank, Sr.; and (6) (7) and (8) two affidavits for an increase in child support filed by Marilyn and an order increasing child support filed in the divorce action between Marilyn and Frank, Sr. The probate court took judicial notice of the court documents with the following caveat: "[W]hile the Court is free to take judicial notice of the existence of a document in a court file, the Court may not take judicial notice of the truth of hearsay statements contained therein. [Citation.] With respect to any and all court records, the law is settled that 'the court will not consider the truth of the document[']s contents unless it is an order, statement of decision, or judgment. [Citation.]' [Citation] 'Otherwise judicial notice for the truth of the content of court records is not appropriate either because the truth of the content is reasonably subject to dispute [citation], or because the content is hearsay [citation].' [Citation]." The probate court did not rule on Bertuccio's request for judicial notice of a court document or the parties' separate objections to "several pieces" of evidence submitted by the parties, finding that the document and evidence were not relevant to the court's decision. On appeal, the parties do not challenge the probate court's evidentiary rulings.

3

According to Marilyn, she, Frank, Sr., and Franco, all agreed that Frank, Sr. and Marilyn would raise Bertuccio as their own. After learning that Franco was his biological father, Bertuccio connected with Franco. They became involved in each other's lives, and Franco told his girlfriend and his neighbor that Bertuccio was his son.

On December 18, 2017, Franco died intestate. Marilyn and Frank, Sr. predeceased Franco. Franco was survived by his sister Roberta Moreno, a niece Cynthia Moreno, and Franco's two half-brothers.

On January 11, 2018, Bertuccio filed a petition to administer Franco's estate, and letters of administration were issued to him on April 24, 2018. Franco's sister Roberta Moreno and niece Cynthia Moreno filed separate petitions, both seeking to remove Bertuccio as administrator of Franco's estate. After Bertuccio died on May 29, 2020, his half-sister was granted letters of special administration and she substituted into the probate proceeding to represent Bertuccio's estate.

At a contested hearing on June 2, 2021, the probate court considered the Morenos' joint motion for summary judgment on their removal petitions, by which the Morenos sought a declaration that Bertuccio was not an heir entitled to inherit from Franco's estate under intestate succession. The court granted the Morenos' motion, holding that because Bertuccio was a child of the marriage of Marilyn and Frank, Sr. under the Family Code section 7540 marital presumption, the Supreme Court's decision in *Cornelious*, *supra*, 35 Cal.3d 461, barred Bertuccio from proving Franco was his natural parent from whom he could inherit in intestate succession under Probate Code section 6453, subdivision (b)(2).

This appeal ensued. (Prob. Code, § 1303, subd. (f) ["[w]ith respect to a decedent's estate," an appeal may be taken from the grant of an order

4

"[d]etermining heirship, succession, entitlement, or the persons whom distribution should be made"]; see *Estate of Miramontes-Najera* (2004) 118 Cal.App.4th 750, 755 ["[a]n order is appealable, even if not mentioned in the Probate Code as appealable, if it has the same effect as an order the Probate Code expressly makes appealable"; "we may consider orders a final judgment for purposes of appeal when as here, they have all the earmarks of a final judgment"].)[4]

**DISCUSSION**

**A. Applicable Law**

The general rules governing intestate succession provide that any part of a decedent's estate not disposed of by will passes to the decedent's heirs. (Prob. Code, § 6400.) An heir is defined as "any person . . . who is entitled to take property of decedent by intestate succession under this code." (*Id.*, § 44.) A child is defined as "any individual entitled to take as a child . . . by intestate succession from the parent which relationship is involved." (*Id.*, § 26.) As pertinent here, since Franco died without a surviving spouse or domestic partner, the entire intestate estate would pass "[t]o the issue of the decedent" (Bertuccio if determined to be an issue of Franco) or, if there is no issue, "to next of kin" (the Morenos). (*Id.*, § 6402, subd. (a).)

---

[4] Bertuccio's notice of appeal from the probate court's June 2, 2021 order was timely filed in the Sixth District Court of Appeal. On August 6, 2021, that court requested Bertuccio to show cause why the appeal should not be dismissed as premature and/or taken from a nonappealable order. Having considered Bertuccio's response, it discharged the order to show cause and allowed the appeal to proceed. On April 1, 2022, this case was fully briefed. On August 9, 2022, the case was transferred by California Supreme Court Order from the Sixth District Court of Appeal (where it had been designated case No. H049297) to the First District Court of Appeal.

Probate Code section 6450 provides that "a relationship of parent and child exists for the purpose of determining intestate succession by, through, or from a person in the following circumstances: [¶] (a) The relationship of parent and child exists between a person and the person's natural parents, regardless of the marital status of the natural parents."

Probate Code section 6453 provides that a natural parent may be established under the provisions of California's version of the Uniform Parentage Act, set forth in Part 3 (commencing with Section 7600) of Division 12 of the Family Code, "except that the relationship may not be established by an action under subdivision (c) of Section 7630 of the Family Code" (i.e., an action by a child or a child's representative) unless "[p]arentage is established by clear and convincing evidence that the parent has openly held out the child as that parent's own." (Prob. Code § 6453, subd. (b)(2).)

A man is "presumed" to be a child's natural father if he meets the conditions in Family Code section 7540. (Fam. Code, § 7611, subd. (a).) Section 7540 provides, in pertinent part, that "the child of spouses who cohabited at the time of conception and birth is conclusively presumed to be a child of the marriage," commonly referred to as the marital presumption. (*Id.*, subd. (a).)

## B. A Child of a Marriage Under the Family Code Section 7540 Marital Presumption is Barred from Proving a Parent-Child Relationship Existed with A Deceased Third Person for Purposes of Inheritance Under Intestate Succession

As a general rule, "[t]here is nothing inherently improper in conferring a right to inherit from two separate paternal stocks." (*Estate of Bassi* (1965) 234 Cal.App.2d 529, 554.) However, our Legislature's statutory scheme for intestate succession, as interpreted by our Supreme Court, provides as a

matter of policy that a child of a marriage under the Family Code section 7540 marital presumption is barred from proving a parent-child relationship existed with a deceased third person for purposes of inheritance under intestate succession. (*Cornelious*, *supra*, 35 Cal.3d at pp. 463–464, 466–467.)

In *Corneliou*s, our Supreme Court addressed this issue under Evidence Code former section 621, subdivision (a),[5] the predecessor statute to the current Family Code section 7540 marital presumption. (35 Cal.3d at pp. 462–463.) In that case, Willis Cornelious died intestate, and his sisters nominated a person to administer his estate. (*Id*. at p. 463.) Appellant Trudy Hall applied for letters of administration on the basis that she was a child of Cornelious and had the right to administer his estate over Cornelious' siblings or nominee. (*Ibid*.) After an evidentiary hearing, the trial court found the requisite parent-child relationship between Hall and Cornelious did not exist because Hall was conclusively presumed to be the daughter of David Fuller[6] and the court appointed the sisters' nominee as administrator of Cornelious' estate. (*Ibid*.)

---

[5] Evidence Code, former section 621, subdivision (a) provided: "Except as provided in subdivision (b), the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." Evidence Code, former section 621, subdivision (b) "[a]llow[ed] the mother or the presumed father to rebut the presumption of subdivision (a) by presenting blood test evidence of nonpaternity to the court within two years of the child's birth." (*Cornelious*, *supra*, 35 Cal.3d at p. 463, fn. 1.)

[6] At the hearing, the following facts were established or accepted as proven: Hall's mother was married to Fuller. (*Cornelious*, *supra*, 35 Cal.3d at p. 463.) They lived together as husband and wife from the time of their marriage up to the time of the hearing, including the time when Hall was conceived. (*Id*. at pp. 463–464.) Fuller was named as Hall's father on her birth certificate. (*Id*. at p. 464.) Although Fuller was not impotent or sterile during the time of Hall's conception, her mother said the spouses were not having intercourse during that period, and that Cornelious was Hall's natural father. (*Ibid*.) Hall was informed of her paternal parentage when

In rejecting Hall's "due process attack" on the application of the Family Code section 7540 marital presumption to bar her right to inherit from Cornelious, the Supreme Court explained: "The conclusive presumption of legitimacy . . . is, of course, a rule of substantive law. [Citation.] It codifies the principle that when husband and wife are living together as such, the integrity of the family should not be impugned. 'The husband is deemed responsible for his wife's child if it is conceived while they are cohabiting; he is the *legal* father and the issue of biological paternity is irrelevant.' [Citation.]" (*Cornelious, supra*, 35 Cal.3d at pp. 464–465.) The Supreme Court noted social policies promoted by the presumption, including the integrity of the family and the stability of inheritance. (*Ibid.*)

In weighing Hall's interest in proving Cornelious was her parent for the purpose of intestate succession against the state's interest in preventing her from rebutting the Family Code section 7540 marital presumption, the Supreme Court explained as follows:

> "In the present case, [Hall's] private interests are simply not as weighty as those of putative fathers . . . who [seek] to care for and nurture their own children. Here, the alleged natural father is dead so that there is no possibility of an ongoing relationship. All [Hall] can hope to gain is the right to inherit [Cornelious'] estate, an interest of a lower order which, of course, is pitted against the competing interests of [Cornelious'] sisters. [¶] The state's interests, by contrast, are

she was 15 years old, and from that time until Cornelious' death in 1980, Hall visited him, accompanied him on errands, and occasionally stayed overnight in his home; Cornelious identified Hall as his daughter to his friends. (*Ibid.*) Hall continued to live in Fuller's household until she became emancipated. (*Ibid.*) At the time of the hearing Hall was 27 years old and had a family of her own. (*Ibid.*) Hall had commenced the probate proceeding without Fuller's knowledge, and Fuller died sometime after the hearing without learning of the proceeding and apparently believing he was Hall's natural father. (*Id.* at p. 464 & fn. 3; see *Id.* at p. 469 [dissenting opn. by Bird, C.J.].) There was also evidence demonstrating that it was biologically impossible for Fuller to be Hall's natural father. (*Id.* at p. 464.)

8

substantial. The policies promoted by the conclusive presumption of legitimacy are well-served by its application here. The familial relationship [Hall] had with David Fuller was far more palpable than the biological relationship she had with Willis Cornelious. [Hall] was reared and supported by David [Fuller], who was named as her father on her birth certificate. He was never told of the present proceeding, and he died thinking he was [Hall's] father. Now, after 27 years as the daughter of David Fuller, [Hall] seeks to establish that another man was her father, and she does so not for filial piety but solely for financial considerations. Her equities are simply not in the same class as those of [putative fathers who seek to care and nurture their own children]. The due process clause does not compel a holding equating the natural urge to look after one's flesh and blood with the equally natural, but somewhat baser, impulse to take care of property one's biological father has failed to dispose of by will. In sum, [Hall] has failed to advance a reason why the Constitution demands that the legislative judgment concerning her parentage should be voided." (*Cornelious*, *supra*, 35 Cal. 3d at p. 467.)

We find unavailing Bertuccio's arguments that *Cornelious* should not be followed because of changes to the Probate Code and Family Code and because "the policy considerations in *Cornelious* have become moot."

We start with the well settled maxim that as an intermediate appellate court we are bound to follow the decisions of our Supreme Court. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [California Supreme Court decisions "are binding upon and must be followed by all the state courts of California"].) A year after *Cornelious* was decided, the Legislature's 1983 amendments to the Probate Code became effective January 1, 1985 (Stats. 1983, ch. 842, §§ 55, 58), yet our high court later cited *Cornelious* with approval in *Michelle W. v. Ronald W.* (1985) 39 Cal.3d 354 (*Michelle W.*): "In *Estate of Cornelious*, *supra*, 35 Cal.3d 461, we held that the guarantee of due process of law was not offended when a child was precluded from proving paternity by operation of [Evid. Code former] section 621 [now Fam. Code, § 7540, subd. (a)]." (*Michelle W.*, *supra*, at p. 363.) And, over the

9

years, intermediate appellate courts have recognized the continued validity of *Cornelius*. For example, in *Estate of Carter* (2003) 111 Cal.App.4th 1139 (*Carter*), in determining whether an estate administrator was required to give notice to potential heirs regarding intestate succession, the appellate court cited *Cornelious* for the proposition that there were situations in which notice was not required due to "bright lines which categorically rule[d] out" that a person is a heir, such as when a potential heir "must be conclusively presumed to be someone else's child because [the child] was conceived by a wife at a time when she was cohabiting with her husband." (*Carter, supra*, at pp. 1146–1147.)

It is also "a basic rule of statutory construction that the Legislature is aware of court opinions existing at the time it amends legislation." (*Estate of Burden* (2007) 146 Cal.App.4th 1021, 1030 (*Burden*).) Since *Cornelious* has been decided, the Legislature has not seen fit to either explicitly overrule *Cornelious* or to otherwise call into question its ruling. Rather, when the Legislature has amended the Probate Code provisions governing intestate succession and the incorporated Family Code provisions it made no substantive changes in the statutory language extant at the time *Cornelious* was decided, thereby leaving intact the court's ruling that a child of a marriage under the Family Code section 7540 marital presumption is barred from proving a parent-child relationship with a deceased third person for purposes of inheritance under intestate succession. " 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' " (*Estate of McDill* (1975) 14 Cal.3d 831, 837–838.) And, "the Legislature is deemed to be aware of . . . judicial decisions . . . and to have . . . amended statutes ' "in light

10

of such decisions as have a direct bearing upon them." ' " (*People v. Overstreet* (1986) 42 Cal.3d 891, 897.)

Concededly, some of the social policies sought to be promoted by the *Cornelious* court, i.e., "protection of the welfare of children by avoiding the stigma of illegitimacy" (*Cornelious, supra*, 35 Cal.3d at p. 465) have been addressed by the Legislature through the elimination, in significant ways, of the *legal* distinction between marital and nonmarital children. We also note that "[t]he law concerning children born to married women when there is a dispute over paternity is a latter-day admixture of ancient common law presumptions and ideas, statutes, statutory interpretation and legislature acquiescence, common law accretion and constitutional imperatives, all in the face of [recent] . . . technological ability, developed . . . to positively identify who a biological father really is." (*Brian C. v. Ginger K.* (2000) 77 Cal.App.4th 1198, 1202–1203.) And "the Legislature has responded to new scientific advances and new ways people now choose to form relationships." (*C.A. v. C.P.* (2018) 29 Cal.App.5th 27, 34.)

Nonetheless, and fundamentally, the Legislature's "legal changes express a consistent desire to preserve" the integrity of the parent-child relationship between married spouses and their children conceived and born when the spouses are living together as such. (*C.A. v. C.P., supra*, 29 Cal.App.5th at p. 34.) To implement that continuing social policy, the Legislature has specifically chosen to retain the Family Code section 7540 marital presumption and continues to treat it separately from other presumptions of parentage. (See, e.g., Fam. Code, § 7612, subds. (a), (b).) And, as pertinent here, Family Code section 7630, subdivision (c), which allows a child to file an action to determine parentage, specifically excludes cases where a child is a child of a marriage under the Family Code section

11

7540 marital presumption: *"Except as to cases coming within Chapter 1 (commencing with Section 7540) of Part 2 . . ,* an action to determine parentage may be brought by the child [or] the personal representative of the child . . . ."  (Fam. Code, § 7630, subd. (c); italics added.)  Given the statutory language, the Legislature plainly believed that a child's right to file an action to determine parentage would be subject to the separate provisions governing cases coming within the sections of the Family Code, commencing with section 7540, including any case law interpreting those sections, which here includes *Cornelious*.

Bertuccio also argues that, despite *Cornelious*, he is entitled to prove Franco is his natural parent for purposes of intestate succession as the child was allowed to do in *Burden*, *supra*, 146 Cal.App.4th 1021.  However, as Bertuccio candidly concedes, the child in *Burden* was not conceived during the marriage of his mother and her husband, and hence, "there could be no conclusive presumption of parentage."  Because the *Burden* court had no reason to discuss and made no mention of the Family Code section 7540 marital presumption or *Cornelious*, we see no need to further address the case.  (See *In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [" 'cases are not authority for propositions not considered' "].)

We conclude our discussion by noting that we are not persuaded by Bertuccio's arguments that the ruling in *Cornelious* frustrates the laws of intestacy and therefore should not be followed by the court.  "Since the right of inheritance is not an inherent or natural right but one which exists only by statutory authority, the law of succession is entirely within the control of the Legislature."  (*Estate of Perkins* (1943) 21 Cal.2d 561, 569.)  Bertuccio's arguments are ones to be made to the Legislature or our Supreme Court.

**C.** **Summary Judgment Was Improperly Granted as the Probate Court Applied the Family Code Section 7540 Marital Presumption Without Making the Requisite Finding that Marilyn and Frank, Sr. Were Cohabiting as Husband and Wife at the Time of Bertuccio's Conception and Birth**

We agree with Bertuccio that summary judgment was improperly granted as the probate court applied the Family Code section 7540 marital presumption without making the requisite finding that Marilyn and Frank, Sr. were cohabiting as husband and wife at the time of Bertuccio's conception and birth.

At the hearing on the motion for summary judgment, the parties addressed Family Code section 7540. The Morenos argued Bertuccio bore the burden of offering admissible evidence to show that Marilyn and Frank, Sr. *had not* been cohabiting at the time of Bertuccio's conception and birth[7] and that Bertuccio's declaration describing what he had been told by Marilyn concerning his conception and birth was insufficient to meet his burden as it was inadmissible hearsay. In response, Bertuccio did not address the burden

---

[7] We note that the Morenos, as summary judgment movants, had the burden of proving that there were no genuine triable issues of fact and that they were therefore entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845 (*Aguilar*).) Moreover, as the proponents of the Family Code section 7540 marital presumption, the Morenos had the burden of proving the foundational fact of cohabitation by a preponderance of the evidence. (See *United Sav. & Loan Assn. v. Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282, 300 ["[t]he proponent of the presumption has the burden of proving, by a preponderance of the evidence, the foundational facts of the presumption"].) If a party "who would bear the burden of proof by a preponderance of the evidence at trial moves for summary judgment," the party "must present evidence that would require a reasonable trier of fact to find any underlying material fact more likely than not." (*Aguilar, supra,* at p. 845.)

of proof but informed the court that a declarant's statements concerning family history were admissible as an exception to the hearsay rule under Evidence Code sections 1310 and 1311.

Following counsel's arguments, the probate court did not specifically rule on the Morenos' hearsay objection to certain statements in Bertuccio's declaration (of which the court had taken judicial notice), nor did the court otherwise make any finding on the issue of the spouses' cohabitation at the time of Bertuccio's conception and birth; the court said only that Marilyn and Frank, Sr. were married at the time of Bertuccio's conception and birth. In its written order, the court again only stated the spouses were married at the time of Bertuccio's conception and birth and made no finding regarding the cohabitation of Marilyn and Frank, Sr.

As is evident by the record, and conceded by the Morenos at oral argument, the probate court did not explicitly make the requisite finding regarding the spouses' cohabitation at the time of Bertuccio's conception and birth before applying the Family Code section 7540 marital presumption. In their briefing and at oral argument, however, the Morenos contend that, based on their evidence that was admitted in the probate court, we can conclude the probate court made an implied finding of cohabitation. We disagree.

The Morenos ask us to consider the judicially noticed contents of the judgments and order filed in the divorce and child support proceedings between Marilyn and Frank, Sr., and the undisputed facts that (1) Marilyn and Frank, Sr. were married at the time of Bertuccio's conception and birth and (2) Frank, Sr. was listed as the father on the child's birth certificate. However, the contents of the divorce judgments and child support order and

14

the above-described undisputed facts say nothing about the spouses' living arrangements at the time of Bertuccio's conception and birth.

The Morenos also ask us to consider the verified statements made by Frank, Sr. and Marilyn in their court documents, in which they averred Bertuccio is a child or issue of the marriage. As a preliminary matter, we note the probate court did not take judicial notice of the hearsay statements contained in those documents. (See *StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9 ["[w]hen judicial notice is taken of a document . . . the truthfulness and proper interpretation of the document are disputable"].) And, even assuming we considered the spouses' verified statements in their court filings, we are not persuaded by the Morenos' assertion that the spouses' statements concerning Bertuccio's status as their child "could not have been possible" if the spouses had not been "cohabiting" at the time of the child's conception and birth. That is not the only reasonable inference to be drawn as the statements say nothing about the spouses' living arrangements at the time Bertuccio was conceived and born. (See *Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1114 ["[t]he married couple must be cohabiting to trigger" conclusive presumption under section 7540; "[c]ohabitation implies more than a stolen weekend or a sexual encounter; it is living together in a marital household, sharing day-to-day life"]; see *Kusior v. Silver* (1960) 54 Cal.2d 603, 616 [cohabitation means " 'living together as husband and wife' "].)

In sum, because the Morenos' admitted evidence in the probate court at best raises a triable issue but does not permit a finding of cohabitation as a matter of law, we cannot uphold the probate court's decision premised on the Family Code section 7540 marital presumption. Accordingly, we shall reverse the order granting summary judgment.

15

As the parties and probate court did not focus on the issue of cohabitation, on remand the court, in its discretion, may allow the Morenos to renew their motion for summary judgment. (See *TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 31 [where court determined the relevant inquiry was different from the one addressed by parties, matter was remanded with directions to allow for the filing of a new summary judgment motion so the parties could elicit key facts that might have a bearing on the relevant inquiry as determined by the court].) A renewed motion would allow the probate court to resolve the motion on the merits in light of our decision that the Family Code section 7540 marital presumption requires a finding that Marilyn and Frank, Sr. were cohabiting as husband and wife when Bertuccio was conceived and born. (See *Gailing v. Rose, Klein & Marias* (1996) 43 Cal.App.4th 1570, 1579 [because the provisions of Code Civ. Proc. § 1008 are not jurisdictional, the trial court had broad discretion to hear an estate's renewed summary judgment motion, even if statutory requisites for renewal were not met].)

## DISPOSITION

The June 2, 2021 order is reversed and the matter is remanded for further proceedings consistent with this opinion. Objector and Appellant Tamara L. Bertuccio, as Special Administrator, is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1); see also, Cal. Rules of Court, rule 8.278(a)(4) ["[i]n probate cases, the prevailing party must be awarded costs unless the Court of Appeal orders otherwise, but the superior court must decide who will pay the award"].)

16

_____

Petrou, J.


WE CONCUR:


_____

Tucher, P.J.


_____

Fujisaki, J.

Trial Court:        Santa Clara County Superior Court

Trial Judge:        Hon. Julie Emede

Counsel:            Hackard Law, Michael Hackard and Brian Geremia; Klaus
                    J. Kolb, Klaus J. Kolb for Petitioners and Respondents.

                    Hansen Law Firm, Craig A. Hansen, Philip E. Yeager, and
                    Collin D. Greene; Carter, Dougherty & Keiley, Scott Carter
                    and Theresa McGuire for Objector and Appellant.